**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KASEY KING; ERIC M. MUATHE,

     Plaintiffs - Appellants,

and

JULIE STOVER; NOAH DAY; LESTER
MOORE; RICHARD DICKERSON;
PATRICK DICKERSON; TRAVIS
CARLTON; DUSTIN BLAIR; MICHAEL
L. KING; THOMAS J. WALTERS;
FREDERICK GRABLE; STACY
STEVENS; ZACHARY WALDEN;
JAMES BECKLEY, JR.; DANNY E.
STEVENS; JASE GREENWOOD;
REGGIE RHUE, JR.; JOE STOVER;
CHET STOVER; HANNAH STOVER;
TONY SIMONS; BO COY; TRENTIN
CALTON; KAREN CALTON; KANDICE
DUNCAN; MATT MOORE; MANDY
DUNCAN; CLARK J. ANDERSON;
MATT SCHWAB; JOSH MOORE;
MAKAIHLAH GIBBS; JENNIFER
TURNBOUGH; TRISTIN CRAMER;
DALLAS GARNER; DREW
CHRISTIANSEN; BEN JAMES;
SHAWNA SMUTZLER; KEVIN
SEYBOLD; WHITNEY COY; MARC
DOHERTY; ROBBY PHILLIPS; JOHN
MACK; LEONARD MACK; STEVE
MELTON; DENI MELTON; DAVID
WILDERMAN; JOHN CLOTHIER;
BRIAN HAMMN,

     Plaintiffs,

No. 17-3095

v.

LORI FLEMING; KURTIS LOY; MY
TOWN MEDIA, INC.; JOE MANNS;
WILLIAM BILL WACHTER,

      Defendants - Appellees,

_____

ADEBAYO OGUNMENO,

      Attorney - Appellant.

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:16-CV-02108-JAR-GLR)**

_____

Prince Adebayo Ogunmeno, Ogunmeno Law Firm, LLC, Kansas City, Kansas, for Plaintiffs - Appellants.

Bernard J. Rhodes, Lathrop Gage LLP, Kansas City, Missouri, for Defendants–Appellees My Town Media Inc. and Joe Manns. Bryan C. Clark, Assistant Solicitor General, Office of the Attorney General, Topeka, Kansas for Defendants - Appellees Lori B. Fleming and Kurtis Loy.

_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

Facing a motion to dismiss, the appellants attached a materially altered e-mail (described as an "unofficial version") to an amended complaint. The appellees notified the appellants that the e-mail was inaccurate, but the appellants refused to withdraw it. As promised, the appellees then filed a motion for sanctions under Fed. R. Civ. P. 11. The

2

district court ordered the requested sanctions, dismissing with prejudice all claims and awarding reasonable attorney's fees. The appellants contest that decision. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's imposition of sanctions, concluding that the district court acted within its discretion.

## BACKGROUND

A group of Kansas citizens (calling themselves the Summary Judgment Group) wanted to oust from office several allegedly biased Kansas state judges, including defendants–appellees Judge Lori B. Fleming and Judge Kurtis Loy. To that end, Kasey King, on behalf of the group, contracted with My Town Media, Inc., which operates a local radio station, to run an advertisement requesting signatures on a petition to "summon a grand jury" and "remove sitting Crawford County District Judges." Appellees' Suppl. App. at 22. My Town Media canceled the advertisement on the second day it aired, which some Summary Judgment Group members blamed on Judges Fleming and Loy. King, Eric Muathe, and sixteen others (collectively, the Plaintiffs) sued those two judges, My Town Media, and its employee Joe Manns[1] (collectively, the Defendants).[2] In this pursuit, the Plaintiffs retained Prince Adebayo Ogunmeno to represent them.

---

[1] The record doesn't reveal Manns's job at My Town Media.

[2] When relevant, we refer to individual plaintiffs by name. And when convenient we refer to Judges Fleming and Loy collectively as "the judges" and My Town Media and Manns collectively as "the media defendants."

The complaint contained seven claims, all centered on the judges' alleged interference with the advertisement: three federal claims under 42 U.S.C. §§ 1981, 1983, and 1985, as well as four state-law claims for breach of contract, fraud, tortious interference with contractual relations, and defamation. The Plaintiffs alleged that Judges "Fleming and/or Loy" had "prevailed on [My Town Media and Manns] to stop running plaintiffs' signature drive radio advertisement immediately." Appellees' Suppl. App. at 23. The Plaintiffs also alleged that the judges had convinced My Town Media "and/or" Manns "to join in the conspiracy." *Id.* at 24.

Three months after filing the initial complaint, the Plaintiffs filed their First Amended Complaint, adding thirty more Summary Judgment Group members as plaintiffs. First the judges, and then the media defendants, moved to dismiss the First Amended Complaint. Before the media defendants filed their motion, the Plaintiffs requested additional time to respond to the judges' motion to dismiss, which they later received.

The Plaintiffs then filed, without obtaining leave, a Second Amended Complaint (the unauthorized complaint). This unauthorized complaint included more factual allegations and also named Bill Wachter, a lawyer and one of the owners of My Town Media, as a defendant. Importantly, to support the Plaintiffs' contention that the judges had conspired with the media defendants, the Plaintiffs quoted from what they represented was an "unofficial version" of an e-mail to Wachter. *Id.* at 88. The unauthorized complaint asserted that Judge Fleming had written the email, and "for maximum effects, [had] deliberately use[d] her [] official court assigned e-mail

4

account." *Id.* In particular, the unauthorized complaint included this quote supposedly from Judge Fleming's e-mail:

> "Bill Wachter, is this your station? Kurt is saying Eric Muathe and posse cometaut (sic) have an ad on this station to oust all the judges. I would just like to know since my kids were listening when I heard the ad this morning on my way to work. If so, get it off." (See Exhibit 2 – unofficial version of defendant Fleming email to defendant Wachter).

*Id.*

As "Exhibit 2" to the unauthorized complaint, the Plaintiffs attached a picture of a crumpled print-out of an e-mail sent from Judge Fleming's e-mail address.[3] *Id.* Only a single line of the e-mail is visible in the attachment. But someone had superimposed additional text on the image. The legible part of the underlying text reads: "Is this your station? Kurt is saying Eric Muathe and posse cometaut have an ad on this station to oust all the judges. I would just like to know since my kids w . . . [.]" *Id.* at 101.

> But the superimposed text reads in full:
>
> [Email Subject Line: "100.7 ESPN"]
> [Thursday, February 19th, 2015 @ 1:43 PM]
> [From: Judge Lori A. Bolton Fleming <lfleming@11thjd.org>]
> [Bill Wachter] is this your station? Kurt [Judge Kurtis I. Loy] is saying Eric Muathe and posse cometaut [sp] have an ad on this station to oust all the judges. I would just like to know since my kids [were listening when I heard the ad this morning on my way to work. If so, get it off].
> [By:] LF

*Id.* (alterations in original).

---

[3] We've attached Exhibit 2 to this opinion.

The day after the Plaintiffs filed the unauthorized complaint, the judges and the media defendants moved to strike it, noting that the Plaintiffs had filed it without the court's leave or the parties' consent. In response, the Plaintiffs asked the district court for leave to amend their First Amended Complaint so they could properly file the unauthorized complaint.

Meanwhile, the extended deadline for the Plaintiffs to respond to the judges' motion to dismiss had passed, so the Plaintiffs moved to file a response out of time— a request the district court denied. The court noted that "[i]n light of the Court's previous extension of time, Plaintiffs' failure to meet this extended deadline, and Plaintiffs' history of noncompliance with the Local Rules in relation to the filing of their response, the Court denies Plaintiffs' motion to file out of time." *Id.* at 145.

Addressing the Plaintiffs' request for leave to amend in a separate order, the district court noted that the "Plaintiffs in this case have fallen short of compliance with the Federal Rules of Civil Procedure and the Local Rules on several occasions" and it expressed "concern[] regarding Plaintiffs' ability to comply." *Muathe v. Fleming*, No. 16-CV-2108-JAR-GLR, 2016 WL 6822653, at *4 (D. Kan. Nov. 17, 2016). Even so, the district court granted in part and denied in part the Plaintiffs' request.

The court limited what the Plaintiffs could include in the yet-to-be-filed Second Amended Complaint. In particular, it ruled that the amendments would be futile for every plaintiff except King and that, even for him, the amendments would

6

be futile as to multiple claims.[4] Ultimately, the district court granted King (and only King) leave to amend three claims.[5] The claims left standing were (1) King's 42 U.S.C. § 1983 claim asserting that the judges and Wachter had deprived him of his First Amendment rights, (2) King's state-law breach-of-contract claim against My Town Media, and (3) King's state-law claim for tortious interference with contractual relations against the judges. *Id.* at *14.

In partially granting the Plaintiffs' motion for leave to amend, the district court relied on the unauthorized complaint's Exhibit 2, the "unofficial version" of Judge Fleming's e-mail. Appellees' Suppl. App. at 88; *see Muathe*, 2016 WL 6822653, at *9. Relying on that e-mail's contents, the district court noted that "Judge Fleming used her court e-mail address to tell Wachter—an attorney who practiced before Judge Fleming and formerly worked at the same firm as her—to have the advertisement taken down." *Muathe*, 2016 WL 6822653, at *9. Giving the Plaintiffs the benefit of this factual allegation, the district court concluded that they had "stated a plausible claim of action under color of state law." *Id.*

---

[4] The district court later entered an additional order, slightly altering which claims could be amended.

[5] King was the sole plaintiff who was a party to the radio contract and so was the only one with standing for the majority of the claims. We will continue to use "Plaintiffs" to refer to the group members who initially sued.

Having granted leave to amend, the court also granted the Defendants' motions to strike the unauthorized complaint. The district court's grant of leave to amend mooted the Defendants' motions to dismiss the First Amended Complaint.

King next filed the authorized Second Amended Complaint (the authorized complaint).[6] Soon after, the judges sent attorney Ogunmeno a safe-harbor letter[7] explaining that the e-mail attached as Exhibit 2 had been "altered" and was "misleading to the point of being fraudulent" and that the "quotation of the email [was] likewise flawed." Appellees' Suppl. App. at 223 (describing Exhibit 2 as a "complete fabrication"). The judges warned that unless King and Ogunmeno "withdr[e]w or dismiss[ed]" the authorized complaint within 21 days, they would file a motion for sanctions under Fed. R. Civ. P. 11. *Id.* The judges attached to the letter a copy of the actual e-mail that Judge Fleming had sent to Wachter, as well as Judge Fleming's affidavit swearing to its accuracy.

The copy of the actual e-mail included none of the language superimposed on Exhibit 2. Instead, the e-mail read, "Is this your station? Kurt is saying Eric Muathe

---

[6] The authorized complaint adhered to the district court's order—King was the only Plaintiff included and the complaint included only the three remaining claims.

[7] Judges Fleming and Loy referred to this as a "'Golden Rule' letter." Appellees' Suppl. App. at 189. But this type of letter is more commonly known as a warning or safe-harbor letter. *See Roth v. Green*, 466 F.3d 1179, 1190–92 (10th Cir. 2006) (discussing such a letter as a warning or safe-harbor letter); *see also* Fed. R. Civ. P. 11(c)(2) (creating a safe-harbor for parties who timely withdraw or correct challenged pleadings). Such a letter advises the opposing party of the issue and gives the party a chance to correct the offending conduct.

and posse cometaut have an ad on this station to oust all the judges. I would just like to know since my kids watch Colgan live through this station. Thanks." *Id.* at 225.

After King refused to withdraw or dismiss the authorized complaint, the judges—true to their word—moved for Rule 11 sanctions. In their motion, they explained that someone had altered the e-mail "to the point of being misleading and fraudulent." *Id.* at 215. And they claimed that Ogunmeno had conducted "no meaningful inquiry into the accuracy or validity of the email." *Id.*

In response, King and Ogunmeno asserted that they had a reasonable basis for believing that they had accurately represented the e-mail's contents to the court. For support, they included affidavits from Travis Carlton, King, and Muathe. Carlton, a member of the Summary Judgment Group, claimed that he had "gained knowledge" that Judge Fleming sent Wachter an e-mail, and that he later "came into possession of the email" but with "some portion of the email [] cut off." Appellants' App. at 86–87. Later, while playing pick-up basketball at a YMCA, Carlton claimed to have overheard Eric Lawson (an attorney of unspecified relevance to the case) "state[] something to the effect" that Wachter had received an e-mail from Judge Fleming asking Wachter to remove the advertisement. *Id.* at 87.

In his affidavit, King claimed that after the advertisement was canceled he learned that "Fleming sent an email to defendant Wachter . . . which triggered Wachter to cancel [his] advertisement." *Id.* at 90. King referenced Carlton's claim that he obtained an incomplete copy of the e-mail. And King stated that he believed

9

that Exhibit 2 is "closer to the truth of the matter than the alleged 'original' email provided by defendant Fleming." *Id.* at 91.

In his affidavit, Muathe similarly referenced Carlton's information. He then admitted to preparing the "demonstrative overlay . . . as a proffer of what [he] believe[d] the cut-off portion" of the e-mail contained. *Id.* at 93. He described Exhibit 2 as "just a demonstration of what [he] believe[d] was closer to the truth." *Id.*

The district court granted the motion for Rule 11 sanctions. The court determined that Ogunmeno had violated Rule 11 by presenting a "fraudulent version" of the e-mail as the "unofficial version." *King v. Fleming* (*King I*), No. 16-2108-JAR-GLR, 2017 WL 386836, at *5 (D. Kan. Jan. 27, 2017). The court concluded that "Exhibit 2 contains at least two indicators of fraud—omitted language and language inserted by a party." *Id.* And the court concluded that Ogunmeno had "fail[ed] to make a reasonable inquiry into the manipulated document" and "also failed to respond reasonably when confronted with the fact that Exhibit 2 had been altered." *Id.* at *6. Based on those findings, the court struck the complaint (and thus dismissed with prejudice all the claims) and awarded attorney's fees and costs against King, Muathe, and Ogunmeno.

The district court directed the parties to consult regarding the amount of attorney's fees and costs to be awarded and, upon reaching agreement, to file a stipulation and request for an order setting forth the amounts. The court further directed that, if the parties couldn't agree, then the Defendants should file a memorandum establishing the amount of fees and costs sought.

In response, King filed a motion for clarification, questioning whether the order had indeed dismissed with prejudice the state-law claims or had instead simply "decline[d] to exercise supplemental jurisdiction" over them. Appellants' App. at 113. And in a separate motion to alter or amend the sanctions order, he requested, through additional discovery, a forensic examination of the e-mail.[8] The district court reaffirmed that it intended to dismiss with prejudice all three remaining claims, state and federal alike. The district court also denied the request for additional discovery. *King v. Fleming* (*King II*), No. 16-2108-JAR-GLR, 2017 WL 1133731, at *1, *4 (D. Kan. Mar. 27, 2017).

After failing to agree with the Plaintiffs on the amount of attorney's fees and costs, Judge Fleming[9] filed a motion for attorney's fees. Judge Fleming sought $6,150 in fees based on a $200-per-hour rate for Kansas Assistant Attorney General Phillips. Because Phillips receives a salary for the Kansas Attorney General's Office,

---

[8] Judge Fleming's attorney had provided Ogunmeno with a CD containing an electronic copy of the e-mail. King claimed that forensic testing was needed because Stephen Phillips, Judge Fleming's lawyer, had "modified" the e-mail. Appellants' App. at 120. To support his argument, King claimed that the e-mail's time stamp had been modified and that Phillips's name appeared "in the metadata of the e-mail." *Id.*

But the Defendants explained to the district court that the time stamp on the e-mail had changed because Judge Fleming forwarded the original e-mail to Phillips. *See* Appellees' Suppl. App. at 257 ("What would be suspicious would be if this counsel were somehow able to send Ogunmeno a CD of the forwarded email without data showing that it had been forwarded, including a new time stamp."). And they reasoned that forwarding the e-mail to Phillips had simply included him in the e-mail chain. Even so, the Plaintiffs continued to demand access to Fleming's court-assigned computer to resolve the dispute.

[9] Judge Loy didn't request attorney's fees.

11

he doesn't bill by the hour. He based his hourly rate on his experience and his review of billing statements for outside counsel the Kansas Attorney General's Office previously retained.

The media defendants filed a separate motion requesting $15,262.50 in fees. Their counsel, Bernard Rhodes, submitted an affidavit detailing his qualifications and the hours that he'd worked. Rhodes requested an award based on an hourly rate of $375—the rate he charged the media defendants—which he claimed was reasonable based on his qualifications and experience.

The district court granted Judge Fleming all of her requested fees and the media defendants most of theirs—concluding that this amount sufficed to deter future misconduct. *King v. Fleming* (*King III*), No. 16-2108-JAR-GLR, 2017 WL 1135579, at *4, *5 (D. Kan. Mar. 27, 2017). King, Ogunmeno, and Muathe appealed, the latter two having been made (and re-made) parties to the case through the imposition of financial sanctions.

## DISCUSSION

Contesting the denial of additional discovery and the imposition of sanctions, King challenges: (1) the district court's refusal to permit additional discovery, (2) the district court's decision to impose sanctions, and (3) the district court's dismissal with prejudice of the federal and state claims as a sanction, while King, Ogunmeno, and Muathe challenge (4) the district court's imposition of attorney's fees as a sanction. We address each in turn.

We review for an abuse of discretion the district court's denial of additional discovery and imposition of Rule 11 sanctions. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination."); *Graham v. Gray*, 827 F.2d 679, 681 (10th Cir. 1987) ("[A] trial court's decision to allow or deny discovery is discretionary, and subject to review only for abuse of discretion."). Under this standard, we will reverse a district court only "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell*, 496 U.S. at 405.

## A. Denial of Additional Discovery

King disputes the contents of Judge Fleming's actual e-mail, contending (1) that "the unauthenticated [] e-mail defendant produced in support of their [sic] motion for sanctions" isn't definitive and (2) that the ultimate result (that the advertisement was pulled from the air) provides evidentiary support for his version of the e-mail. Appellants' Opening Br. at 34. He argues that the district court abused its discretion by ruling on the sanctions motion before he could, as requested, "submit the defendants' purported 'original' e-mail to forensic test and examination." Appellants' App. at 74.

In response, the Defendants point to the district court's statement that its decision to impose sanctions "rested on a finding of willful conduct of [King] and his counsel in incorporating a manipulated document into the [authorized complaint] without performing a reasonable inquiry under the circumstances." *King II*, 2017 WL

13

1133731, at \*4; *see* Appellees' Response Br. at 51 ("[The Plaintiffs] knew the version of Judge Fleming's email [that they presented to the court] did not reflect the actual text of the e-mail, yet they relied on it anyway."). And in its order denying additional discovery, the court reiterated that its sanctions order didn't "rest on any finding as to the authenticity or veracity of the email" provided to Ogunmeno by Judge Fleming. *King II*, 2017 WL 1133731, at \*4. Instead, the district court noted that any "apparent inconsistencies" in the e-mail "do nothing to cure the conduct" that led to the sanctions. *Id.*

The court's conclusion that presenting the manipulated document is what justified sanctions frustrates King's arguments. The Plaintiffs (and, for the refiling, King alone) presented the e-mail exhibit as accurate when it was merely "suggested language." Appellant's Opening Br. at 15. No forensic analysis could justify that decision. And so the district court acted well within its discretion in denying King's request for additional discovery.[10]

## B. Rule 11 Sanctions

King, Muathe, and Ogunmeno complain that the district court abused its discretion by imposing Rule 11 sanctions.

Under Rule 11(b), for every pleading, motion, or other paper presented to the court, an attorney must certify, to the best of his knowledge, information, and belief,

---

[10] Not to mention that access to the e-mail (in hard copy and electronic format) coupled with an affidavit speaking to its veracity should suffice to authenticate it.

formed after a reasonable inquiry, (1) that he isn't presenting the filing for any improper purpose, (2) that the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for changing the law, (3) that the factual contentions are warranted on the evidence or will likely have support after further investigation, and (4) that the denials of factual contentions have similar support. Fed. R. Civ. P. 11(b).

When, after notice and an opportunity to respond, a court determines that an attorney has violated Rule 11(b), it may impose sanctions under Rule 11(c). *See Cooter & Gell*, 496 U.S. at 407 (explaining that district courts have "broad discretion to impose Rule 11 sanctions"). The court must consider the purposes to be served by the imposition of sanctions and so limit its sanctions "to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

## 1. Rule 11 Violation

King argues that the district court "erred and abused its discretion when it concluded [Ogunmeno] failed to conduct reasonable investigation" into Exhibit 2 and that therefore sanctions weren't justified. Appellants' Opening Br. at 29.

But the district court carefully analyzed whether "Ogunmeno's conduct, in light of what was known about Exhibit 2, constituted a Rule 11 violation." *King I*, 2017 WL 386836, at *5. And the court concluded that Ogunmeno hadn't "made *any* inquiry, let alone a reasonable one, into the veracity of Exhibit 2, despite the strong

15

indicators of fraud and his knowledge that the document did not represent the full email." *Id.*

Bolstering that conclusion, the court noted that Ogunmeno had submitted Exhibit 2 twice—separately attaching it to the unauthorized and authorized complaints. *Id* at *6. "Perhaps more troubling" to the district court was that both the unauthorized and authorized complaints "quote[] directly from the superimposed text that Mr. Muathe inserted into Exhibit 2." *Id.* The district court further observed that "Ogunmeno's inclusion of the superimposed text . . . without brackets or any other qualifiers, masks the fact that the quoted text was created by Mr. Muathe." *Id.*

Next, the district court noted that when confronted with the safe-harbor letter, which included a copy of what appears to be the real e-mail Fleming sent to Wachter, Ogunmeno "refused to dismiss the [authorized] Complaint," and didn't "consult with any of the individuals that were supposedly the sources behind [the] inserted text." *Id.* Instead, the court pointed out, Ogunmeno "flatly asserted that Defendants' claim that he conducted no inquiry into the inserted text was 'without merit.'" *Id.* (quoting Plaintiff's Response to Defendants Fleming & Loy's Joint Motion for Rule 11 Sanctions & Memorandum in Support at 7, *Muathe v. Fleming*, 2:16-cv-02108-JAR-GLR (D. Kan. Jan. 13, 2017), ECF No. 60).

Finally, the district court referenced Ogunmeno's "incredible request" that King be allowed submit the e-mail to forensic testing. *Id.* The court determined that the "request demonstrate[d] that not only did Mr. Ogunmeno fail to make a reasonable inquiry into the manipulated document, but he also failed to respond

16

reasonably when confronted with the fact that Exhibit 2 had been altered." *Id.* In light

of that overwhelming evidence, the district court concluded that "Rule 11 sanctions

[we]re warranted." *Id.*

The district court acted within its discretion in finding a Rule 11 violation

based on Ogunmeno's submitting to it a doctored document (and incorporating that

document into the unauthorized and authorized complaints). This is especially so

when Ogunmeno again and again clung to the falsified e-mail as true. Having

concluded that the court didn't abuse its discretion in finding a Rule 11 violation, we

next address each specific sanction in turn.

## 2. Dismissal of Federal and State-Law Claims

King points out that we have repeatedly described dismissal with prejudice as

an "extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus v.*

*Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). And indeed, dismissing a case with

prejudice and thus denying a party adjudication on the merits isn't a step to be taken

lightly.

Even so, we do allow for dismissal with prejudice as a sanction.[11] And we have

good reason for that—district court judges need to be able to control their

---

[11] Cases involving dismissal with prejudice as a Rule 11 sanction are uncommon. *See Gatewood v. CCIA*, 16 F. App'x 864, 865 (10th Cir. 2001) (upholding dismissal with prejudice as a sanction under Rule 11 after party filed claims lacking federal jurisdiction and failing to establish a claim on which relief could be granted). But we have upheld dismissal with prejudice as a sanction in a variety of other contexts. *See, e.g.*, *Xyngular v. Schenkel*, 890 F.3d 868, 875 (10th Cir. 2018) (upholding dismissal with prejudice for bad-faith pre-litigation conduct);

17

courtrooms. *See Cooter & Gell*, 496 U.S. at 393 ("[A]ny interpretation [of Rule 11] must give effect to the Rule's central goal of deterrence."). So dismissal with prejudice is an essential tool in the sanction toolbox.

To analyze dismissal, the district court used a five-factor test (taken from the dismissal-as-a-sanction framework for discovery violations), noting that the "non-exhaustive list of factors helps guide the determination of whether dismissal is an appropriate sanction." *King I*, 2017 WL 386836, at *7. Those factors are (1) "the degree of actual prejudice to the defendant" caused by the misconduct; (2) "the amount of interference with the judicial process"; (3) "the culpability of the litigant"; (4) "whether the court warned the [litigant] in advance that dismissal of the action would be a likely sanction for noncompliance"; and (5) "the efficacy of lesser sanctions." *Id.* (quoting *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005)).

Though this test originated outside of Rule 11, we have used it in resolving a variety of analogous violations—under Fed. R. Civ. P. 16(f), 37(b), and (41)(b), as well as under the court's inherent powers.[12] And we have done so for good reason—

---

*Fischer v. Dunning*, 574 F. App'x 828, 832 (10th Cir. 2014) (upholding dismissal with prejudice as a discovery sanction); *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005) (upholding dismissal with prejudice as a sanction for perjury); *Jones v. Thompson*, 996 F.2d 261, 266 (10th Cir. 1993) (upholding dismissal with prejudice for noncompliance with court orders).

[12] *See Xyngular*, 890 F.3d at 873, 874–75 (applying the five-factor test in evaluating a district court's use of its inherent powers to dismiss as a sanction for bad-faith pre-litigation conduct); *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*,

18

the non-exhaustive factors consider the damage done, the culpability for that damage, and the impact of dismissing with prejudice. The factors give district courts a roadmap to use in considering a dismissal-with-prejudice sanction.[13] But they also give those district courts leeway to apply on-the-ground knowledge to decide the appropriateness of dismissal with prejudice. *See Chavez*, 402 F.3d at 1044 ("This list is not exhaustive, nor are the factors necessarily equiponderant."); *Ehrenhaus*, 965 F.2d at 921 ("These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction."). So we see no abuse of discretion in the district court's choice of test.[14]

Applying the five-factor test, the district court found that dismissal was appropriate.[15] King contests that conclusion. We address each of the five factors in

---

497 F.3d 1135, 1143–44 (10th Cir. 2007) (applying the same factors to a dismissal sanction under Fed. R. Civ. P. 41(b) for failure to prosecute); *Jones*, 996 F.2d at 264–66 (applying the same factors to a dismissal sanction under Fed. R. Civ. P. 16(f) for misconduct); *Ehrenhaus*, 965 F.2d at 920–22 (applying the same factors to a dismissal sanction under Fed. R. Civ. P. 37(b) for discovery misconduct).

[13] As we have noted, "Dismissing a case with prejudice, however, is a [harsh] remedy[—]the death penalty of pleading punishments . . . ." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 (10th Cir. 2007). Thus, we stated in *Nasious* (under Fed. R. Civ. P. 41(b), where no "particular procedure[]"is normally required) that "for a district court to exercise soundly its discretion in imposing such a result, it must first consider certain criteria." *Id.* This directive informs our decision to approve the district court's rigorous analysis here.

[14] Indeed, no one contests that the test itself was inappropriate.

[15] Before turning to the test's application, we recognize that its first three factors, which analyze the wrongdoing and its effects, inform the decision to apply any sanction. Those factors are: the degree of prejudice to the defendant, the

19

turn before turning to King's separate objection to the dismissal of the state-law claims.

### i.    Degree of Prejudice to the Defendant

The more the misconduct prejudiced the opposing party, the more appropriate dismissal becomes as a sanction. *See Ehrenhaus*, 965 F.2d at 921.

King argues that the Defendants had access to the "alleged original unauthenticated secret email" all along and could have produced it earlier, so "[a]ny degree of actual prejudice to the defendants was self imposed." Appellants' Opening Br. at 18. Thus, he argues, even if the Defendants suffered prejudice, they "failed to mitigate their damages by hiding the so-call [sic] original secret email until they file[d] their motion for sanction[s]." *Id.* So he argues that prejudice didn't justify dismissal.

The procedural history contradicts King's claim. The Defendants filed their motions to dismiss *before* the Plaintiffs submitted the falsified e-mail with their unauthorized complaint. So the Defendants couldn't have addressed the falsified e-mail in their motions to dismiss. And the judges sent the safe-harbor letter just three days after King filed the authorized complaint (after given leave to do so). The

---

interference with the judicial process, and the culpability of the litigant. *Ehrenhaus*, 965 F.2d at 921. By comparison, the next two factors—whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance and whether lesser sanctions would be effective, *id.*,—are dismissal-specific.

Defendants didn't delay in notifying King of his misrepresentation. They acted swiftly once presented with the authorized complaint's manipulated e-mail.[16]

We have no question that the complaint (and its Exhibit 2) prejudiced the Defendants in a real way. As the district court concluded, "[s]ince the filing of [King's] Second Amended Complaint [(the unauthorized complaint)] on July 27, 2016, Defendants have been forced to litigate a case that would not have proceeded without the presence of the manipulated document and the associated allegation." *King I*, 2017 WL 386836, at *7. In addition, the court pointed out that the "Defendants have also been required to spend time and resources attempting to confer with [King's] counsel [Ogunmeno] about this matter and filing the instant motion." *Id.* And the district court noted that "the manipulated document had a significant impact on the Court's previous ruling granting [King] leave to amend." *Id.* Indeed, the district court's order granting leave to amend discussed the e-mail at length. *See Muathe*, 2016 WL 6822653, at *3.

The complaint and accompanying manipulated e-mail prejudiced the Defendants: The district court didn't abuse its discretion in concluding that the degree of prejudice suggested dismissal was appropriate.

---

[16] And regardless of how long the Defendants waited, they were prejudiced by King's actions—their inaction wouldn't justify King's (and Muathe's and Ogunmeno's) deception and the resulting prejudice.

### ii. Interference with the Judicial Process

"The second factor . . . is the amount of interference with the judicial process." *Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993). Greater degrees of obstruction help justify a dismissal sanction.

King argues that because "the lower court did not make any findings that plaintiff [sic] second amended complaint was frivolous," no evidence of interference with the judicial process exists. Appellants' Opening Br. at 19. And he repeats his argument that the Defendants share the blame because they didn't provide the court with the e-mail sooner.[17]

It is hard to imagine how presenting falsified evidence to a federal district court would *not* interfere with the judicial process. Neither of King's arguments justifies submitting materially altered evidence. By filing the e-mail, King and Ogunmeno wasted the district court's time. At the very least, the court spent time reading and analyzing the unauthorized complaint and the attached e-mail. That alone is interference. But here "the manipulated document had a *significant impact* on the Court's previous ruling granting [King] leave to amend." *King I*, 2017 WL 386836, at *7 (emphasis added). And the court had to "revisit that ruling, as well as devote finite time and resources to deciding" the sanctions motion. *Id.* The district court spent substantial time and energy dealing with the unauthorized and authorized complaints (and their

---

[17] King also claims that because he "was exercising his First Amendment right to access to court" by filing the complaint, there was no interference with the judicial process—but the First Amendment is in no way a defense to Rule 11 violations. Appellants' Opening Br. at 19.

Exhibit 2). So King's actions substantially interfered with the judicial process. *See Chavez*, 402 F.3d at 1045 (finding interference with the judicial process where a party's "lack of candor . . . was material to the determination of the central issue in the case").

This evidence shows that the court didn't abuse its discretion in concluding that King's and Ogunmeno's actions interfered with the judicial process, supporting dismissal.

### iii. Culpability of the Litigants

"A litigant's culpability is the third factor"—the greater the culpability, the more appropriate a dismissal sanction becomes. *Jones*, 996 F.2d at 265. This factor is key, as the question of whether the party's conduct before the court was appropriate controls the basis for applying Rule 11 sanctions in the first place. *See* Fed. R. Civ. P. 11(b); *supra* Section B.1.

Disclaiming culpability for submitting the falsified e-mail, King argues that though he, Muathe, and Ogunmeno "were aware of the graphic overlay on the email . . . . [T]hey reasonably held the belief that discovery w[ould] reveal the true content of the original email." Appellants' Opening Br. at 19. So King stands by the past behavior, claiming that because he didn't have access to the "secret email" and because conspiracy allegations, by their nature, require guessing at facts, he acted reasonably.[18] *Id.* at 28. He concludes that "a reasonable person could infer defendant

---

[18] King, in an attempt at misdirection, points to this court's past statements noting the difficulty of proving conspiracy allegations before discovery. But the caution needed in pre-trial disposition of conspiracy claims has no bearing on

Fleming urged or ordered defendant Wachter to cancel plaintiff's radio advertisement contract" and therefore, that he isn't culpable for presenting the doctored e-mail. *Id.* at 29.

The district court disagreed. It concluded that "despite knowing that his clients had tampered with Exhibit 2, Mr. Ogunmeno employed a 'full speed ahead'—rather than a 'stop and think'—approach." *King I*, 2017 WL 386836, at *5. King claims that individuals with "personal knowledge of the secret email" were unwilling to come forward publically due to fear of reprisal, Appellants' Opening Br. at 25. But no hunch or surmise justified submitting a "demonstrative overlay" on the e-mail. Appellants' App. at 93. Even if King, Muathe, and Ogunmeno had been justified in thinking that the e-mail really said what they allege, they weren't justified in presenting as truth what was really a hopeful guess. And it's hard to see how their scant evidence suggests any certainty about the e-mail's contents. On top of that, when presented with the safe-harbor letter, King and Ogunmeno doubled down and demanded forensic testing rather than withdrawing the forged document. King, Muathe, and Ogunmeno were all culpable for slightly different behavior—Muathe

whether submitting a falsified document violates Rule 11. And the difficulty of "unravel[ing] a well planned conspiracy" doesn't justify fabricating documents. Appellants' Opening Br. at 29.

created the demonstrative overlay, King was the plaintiff who submitted it, and Ogunmeno was the lawyer behind it all.[19]

Submitting an altered document to a court is deceitful. And not retracting that manipulation when presented with evidence of its falsehood is doubly so. Thus the district court didn't abuse its discretion in finding King's, Muathe's, and Ogunmeno's conduct culpable, bolstering its decision to apply a dismissal sanction.

### iv. Warning

"The fourth factor asks 'whether the litigant was warned in advance that dismissal was a likely sanction.'" *Xyngular v. Schenkel*, 890 F.3d 868, 874 (10th Cir. 2018) (quoting *LaFleur v. Teen Help*, 342 F.3d 1145, 1151 (10th Cir. 2003)). Where the court had warned of dismissal, a dismissal sanction is more appropriate. *See id.* at 874–75 (holding that dismissal for pre-litigation misconduct doesn't necessarily require prior warning).

King is right that the district court "dismissed [the] case without warning." Appellants' Opening Br. at 20. But Rule 11 has its own notice requirement, rendering this factor (which the district court took from the discovery-sanctions context) superfluous. Complying with Rule 11's safe-harbor provision, the "Defendants served a copy of their motion, which sought dismissal as a sanction, on" King. *King I*, 2017 WL 386836, at *7; *see* Fed. R. Civ. P. 11(c). That notice was sufficient both

---

[19] No plaintiff argues that his culpability ought be analyzed separately. So we don't consider any such argument.

for purposes of Rule 11 and the five-factor dismissal-as-a-sanction test. Hence the district court acted within its discretion when it concluded that the lack of official warning didn't weigh against dismissal.

### v.    Efficacy of a Lesser Sanction

Because "dismissal is a severe sanction and is not ordinarily warranted if lesser sanctions would be effective," we require courts to consider, as the fifth and final factor, the potential efficacy of lesser sanctions. *Jones*, 996 F.2d at 265 (citing *Ehrenhaus*, 965 F.2d at 922). Where lesser sanctions would be effective, a dismissal sanction is less likely to be justified.

King accuses the district court of going "for the most extreme sanctions" rather than something more tempered. Appellants' Opening Br. at 20. "For example," he suggests, the district court could have struck "the offending exhibit," prohibited its use, or merely reprimanded him for proffering it to the court. *Id.*

But the district court had good reason to choose dismissal with prejudice over lesser sanctions. The court acknowledged that dismissal is harsh but determined that it is "warranted where, as here, a party manipulates evidence that is central to the case, counsel fails to make a reasonable inquiry into such evidence, and counsel promotes the manipulated evidence with knowledge of the manipulation." *King I*, 2017 WL 386836, at *8. The court also expressed concern that without dismissal, Ogunmeno would "continue to abuse the judicial process by using altered evidence" and thus continue to drain judicial resources. *Id.* at *7. As bases underlying its concern, the court pointed to "Ogunmeno's history of non-compliance" with

26

procedural rules, "his insistence on advancing this case despite his knowledge that a document central to the litigation was manipulated, and his failure to perform a reasonable inquiry into" the e-mail. *Id.*

We agree that this evidence supported the need for an unforgiving sanction to deter future misconduct by King and Ogunmeno and to issue a clear statement to potential imitators. *See Jones*, 996 F.2d at 266 ("Dismissing a case with prejudice serves at least two purposes. It penalizes the party whose conduct warrants the sanction and discourages 'those who might be tempted to such conduct in the absence of such a deterrent.'" (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam)). The district court didn't abuse its "broad discretion" in determining that dismissal, rather than a lesser sanction, was appropriate. *Xyngular*, 890 F.3d at 875.

\* \* \*

The district court carefully analyzed the evidence and the parties' arguments in the context of these five factors. We see no abuse of discretion in that analysis.

But King separately contests the dismissal with prejudice of the state-law claims, arguing that after dismissing the federal claims the district court should have declined to exercise jurisdiction over the state-law ones. We now turn to that argument.

### vi. Dismissal of State-Law Claims

King argues that after the district court dismissed all the federal claims, it abused its discretion by dismissing with prejudice the state-law claims. He submits

that the district court should instead have declined to exercise jurisdiction over those claims.

True, federal judges rarely dismiss state-law claims with prejudice as a sanction; having resolved all the federal claims, they tend to redirect the lingering state-law claims to state court. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998))). King argues that the district court here should have done exactly that, leaving the Plaintiffs free to pursue their state-law claims in state court.

We aren't persuaded. The Supreme Court has established that generally when a district court dismisses all federal claims before trial, it should dismiss any remaining state-law claims *without* prejudice. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). But this general practice "does not establish a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see, e.g.*, *Yeyille v. Miami Dade Cty. Pub. Sch.*, 643 F. App'x 882, 885 n.2 (11th Cir. 2016) ("The district court was not required to dismiss Yeyille's two state-law claims without prejudice."). Instead, district courts need to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."

28

*Cohill*, 484 U.S. at 350 ("[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility . . . .").

Here, the district court dismissed with prejudice all the claims (state and federal) as a sanction for submitting the materially altered e-mail. That's within the district court's discretion.

### 3. Attorney's Fees

King, Muathe, and Ogunmeno contest the district court's fee awards: They claim that the award to Judge Fleming wasn't reasonable and that absent the media defendants filing a Rule 11 sanctions motion, they weren't entitled to a fee award. We address each objection in turn.

#### i. Judge Fleming's Fee Award

When imposing attorney's fees as a sanction under Rule 11, we have highlighted four factors for a district court to consider. Those are (1) the reasonableness of the proposed fees, (2) the minimum amount required to deter misconduct, (3) the offender's ability to pay, and (4) "other factors" as the court sees fit, such as the offending party's history, experience, and ability; the severity of the violation; and the risk of chilling zealous advocacy. *See White v. Gen. Motors Corp.*, 908 F.2d 675, 684–85 (10th Cir. 1990).

King, Muathe, and Ogunmeno argue that the district court's award of fees to Judge Fleming was an abuse of discretion, taking issue with the district court's analysis of each factor.

### 1. Reasonableness of Proposed Fees

"The plain language of [Rule 11] requires that the [district] court independently analyze the reasonableness of the requested fees and expenses." *Id.* at 684 (citing *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 195 (3d Cir. 1988)). When reviewing the reasonableness of a request, a reviewing court looks at both the amount of time spent and whether the hourly rate for that time was reasonable. *See id.* (citing *Ramos v. Lamm*, 713 F.2d 546, 553–55 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717 n.4, 728 (1987)). "The injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims." *Id.*

King, Muathe, and Ogunmeno contest the reasonableness of the district court's award to Judge Fleming on two grounds. First, they reiterate their argument that because the Defendants possessed the "purported original secret email" all along, they exacerbated the problem. Appellants' Opening Br. at 37. We have already dealt with this argument—the Defendants didn't inappropriately withhold the e-mail from the Plaintiffs. *See supra* Section B.2.iii.

Second, King, Muathe, and Ogunmeno argue that because Judge Fleming's attorney, Phillips, was a salaried state employee, his $200 hourly rate was excessive. They argue that he should have measured his fees by prorating his salary, not by looking at prevailing market rates. This argument also fails.

As the district court explained, King, Muathe and Ogunmeno "provide[d] no good reason, and the Court c[ould] find none, in support of their request to tie the hourly rate to Mr. Phillips' salary." *King III*, 2017 WL 1135579, at *2. We regularly uphold market-rate fee awards for salaried attorneys who don't bill by the hour. *See, e.g.*, *Lippoldt v. Cole*, 468 F.3d 1204, 1224–26 (10th Cir. 2006) (upholding a market-rate award); *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) ("The proper procedure for determining a reasonable attorneys' fee is to arrive at a lodestar figure by multiplying the hours plaintiff's counsel reasonably spent on the litigation by a reasonable hourly rate.").

We find no abuse of discretion in the district court's conclusion that the $200 hourly fee was "exceedingly reasonable" for an attorney with Phillips's experience.[20] *King III*, 2017 WL 1135579, at *2.

## 2. Minimum Required to Deter

"[T]he primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit." *White*, 908 F.2d at 684. Therefore, otherwise "reasonable" fees are excessive if they are greater than "that amount reasonably necessary to deter the wrongdoer." *Id.* at 685.

---

[20] And, as the court pointed out, the fee request (and resulting award) didn't include any work from before the falsified e-mail, nor did it include any "work by paralegals or support staff, work by counsel for Judge Loy, or any 'costs' associated with the litigation." *King III*, 2017 WL 1135579, at *2.

King, Muathe, and Ogunmeno argue that the district court needed go no further than striking the e-mail exhibit, prohibiting its use, warning them, or giving them a "hard-nosed reprimand." Appellants' Opening Br. at 39. But the district court concluded that $6,150 was the minimum amount necessary to deter misconduct based on the seriousness of King's, Muathe's, and Ogunmeno's transgressions, their history of noncompliance, and King's and Ogunmeno's failure to withdraw the authorized complaint after receiving the safe-harbor letter. *King III*, 2017 WL 1135579, at \*2. In light of their conduct, we see no abuse of discretion in the district court's conclusion.

### 3. Ability to Pay

"[B]ecause the purpose of monetary sanctions is to deter attorney and litigant misconduct," district courts must consider the offender's ability to pay. *White*, 908 F.2d at 685. The sanctioned party bears the burden to prove its inability to pay an otherwise-appropriate sanction. *Id.*

King, Muathe, and Ogunmeno admit that there is not "much evidence in the record as to their ability to pay." Appellants' Opening Br. at 39. But they claim that introducing such evidence would have been fruitless because "[a]ny evidence of inability to pay would probably [have] be[en] ignored." *Id.* They accuse the district court of treating them unfairly by "overlook[ing] [their] pleas that the court temper[] justice with mercy." *Id.* at 39–40. This accusation doesn't influence whether King, Muathe, and Ogunmeno showed that the suggested fee was beyond their means.

The district court was "unwilling to speculate as to a party's ability to pay, or lack thereof, without any information from the sanctioned party." *King III*, 2017 WL

32

1135579, at *2. So it didn't consider this factor. And rightly so. It was King's, Muathe's, and Ogunmeno's burden to show inability to pay. Because they failed to do so, the court didn't abuse its discretion by not weighing this factor in their favor.

### 4. "Other" Factors

"In addition, the court may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances." *White*, 908 F.2d at 685. This catch-all overlaps substantially with the dismissal-as-sanction factors discussed above: King's, Muathe's, and Ogunmeno's culpability, the degree of prejudice to the Defendants, and the interference with the judicial process.

King, Muathe, and Ogunmeno argue that "there is no evidence of malice, or bad faith" and that "the imposition of this type of severe sanctions will discourage litigation of civil rights conspiracy cases and it also risks chilling zealous advocacy." Appellants' Opening Br. at 40.

The district court analyzed these other factors again in calculating Judge Fleming's fee award, reiterating (1) that King, Muathe, and Ogunmeno had engaged in severe misconduct, (2) that they had filing restrictions against them in state court for similar conduct, and (3) that the court had previously admonished Ogunmeno for violations of the local rules. *King III*, 2017 WL 1135579, at *3. The court also noted that Ogunmeno has other pending cases in federal court, bolstering the need to deter

33

him from future misconduct. *Id*. Out of an abundance of caution, the court also analyzed whether the sanctions would indeed chill advocacy. *Id.* And the court concluded that the sanctions were "intended to ensure more effective advocacy by encouraging counsel to inquire reasonably into the factual circumstances of a case before filing papers with the Court in the future, as Rule 11 contemplates." *Id.* (citing Fed. R. Civ. P. 11(b)).

"[G]uided by the severity and willful nature of the Rule 11 violations at issue here," the district court concluded that these other factors also supported an award of attorney's fees and costs. *Id.* We discern no abuse of discretion in that conclusion.

\*     \*     \*

The district court's analysis of the four-factor test supported the award of $6,150 in attorney's fees to Judge Fleming. Thus the fee award wasn't an abuse of discretion.

### ii.    The Media Defendants' Fee Award

On appeal, King, Muathe, and Ogunmeno argue that the district court abused its discretion by awarding fees to the media defendants even though they hadn't filed their own motion for sanctions. *See* Fed. R. Civ. P. 11(c)(2) (requiring that a "motion for sanctions [] be made separately from any other motion"); Fed. R. Civ. P. 11(c)(4) ("The sanction may include . . . an order directing payment *to the movant* of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." (emphasis added)).

In the district court, King, Muathe, and Ogunmeno didn't object to the award of fees to the media defendants. Thus, at most, we would review the district court's decision for plain error. But despite disputing the fee award before this court, they fail to argue for plain-error review, so they have waived the issue. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128, 1130–31 (10th Cir. 2011) (explaining that the failure to argue plain error "marks the end of the road" for an argument presented for the first time on appeal). Because they don't object to the size of the award on appeal, our inquiry ends here. The award of $12,000 to the media defendants stands.

## CONCLUSION

For the above reasons, we affirm.

MESSAGE

Thu 2/19/2015 1:43 PM

Lori Fleming <lfleming@11thjd.org>

"100.7 ESPN

[Email Subject Line: "100.7 ESPN"]

[Thursday, February 19th, 2015 @ 1:43 PM]

[From: Judge Lori A. Bolton Fleming <lfleming@11thjd.org>]

this your station? Kurt is saying Eric Muathe and posse cornetaut have an ad on this station to oust all the judges. I would just like to know since my kids w

[Bill Wachter] is this your station? Kurt [Judge Kurtis I. Loy] is saying Eric Muathe and posse cornetaut [sp] have an ad on this station to oust all the judges. I would just like to know since my kids [were listening when I heard the ad this morning on my way to work. If so, get it off].

[By:] LF

Hon. Lori A. Bolton Fleming
and County District Court
602 N. Locust
Pittsburg, KS 66762
620-231-3570
lfleming@11thjd.org