**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

Nos. 24-2639 and 24-2640

---

ROBERT SOFALY

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC

JP WARD & ASSOCIATES; TRAVIS A. GORDON;
JOSHUA WARD,*
Appellants
*Under Fed. R. App. P. 12(a)

DAMIEN MALCOLM

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC

JP WARD & ASSOCIATES; TRAVIS A. GORDON;
JOSHUA WARD,*
Appellants
*Under Fed. R. App. P. 12(a)

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 2:23-cv-02018 & 2:24-cv-00053)
District Judge: Hon. Cathy Bissoon

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 16, 2025

Before: BIBAS, MONTGOMERY-REEVES, and AMBRO,
*Circuit Judges*

(Filed: September 22, 2025)

Ryan James
JAMES LAW LLC
1200 Lincoln Way
White Oak, PA 15131
*Counsel for Appellants*

Lauren M. Burnette
MESSER STRICKLER BURNETTE
1200 Riverplace Boulevard, Suite 105, #1558
Jacksonville, FL 32207
*Counsel for Appellee*

OPINION OF THE COURT

BIBAS, *Circuit Judge*.

Courts depend on lawyers' honesty. Lies, misrepresentations, even half-truths corrode the rule of law. So courts may sanction lawyers who violate their duty of candor. Here, two lawyers sent made-up, handwritten dispute letters to manufacture violations of the Fair Debt Collection Practices Act by a debt collector, hoping to recover statutory attorney's fees. Once the District Court smelled the scheme, it properly sanctioned the attorneys for engaging in a "campaign of deception." App. 29. We will affirm.

## I. THE DISPUTE LETTERS DESIGNED TO FAIL

Under the FDCPA, when a creditor notifies credit bureaus about a consumer's debt, it must disclose whether the debt is disputed. 15 U.S.C. § 1692e(8). If the creditor fails to do so, the consumer can sue and recover up to $1,000 in statutory damages plus costs and reasonable attorney's fees. § 1692k(a)(2), (3).

J.P. Ward & Associates is a debt-defense law firm that handles many § 1692e(8) claims. To "scal[e]" up its practice and get more fees, named partner Joshua Ward and lawyer Travis Gordon hatched a scheme. Appellants' Br. 4. If a client approached the firm to dispute a debt, the firm would get his permission to send the creditor a handwritten letter supposedly signed by the client himself.

Each "client letter" used the same template. Most of it was gibberish, alluding to "confusing times," lamenting how "difficult [it was] for [the writer] to stay on top of everything," and complaining that someone was trying to sell the writer a "crazy XR 65A80K thing" (presumably a TV). *See infra* A1–A2.

Nestled amid this nonsense, the form letter obliquely referred to disputing a potential debt: "I saw that your company is reporting that I owe you a sum of money, but I just don't think that is correct." *Id*. The firm would then sign the client's name and send the disorienting letter to his creditor. If the creditor or the debt collector who bought the debt did not then mark the debt as disputed, the firm would sue.

Why handwrite a stream of consciousness? Why ape Joyce, not Hemingway? Ward and Gordon told the District Court exactly why. Debt collectors get floods of debt disputes. Ward and Gordon theorized that debt collectors process the deluge by using software. They assumed that software could flag clear, meritorious disputes, especially in typed letters, but not in handwritten ones stuffed with fluff and guff. So they wrote letters by hand to boost the chances of *not* getting a response. That would create a successful §1692e claim and a payday. In other words, the letters were designed not to succeed in disputing a debt, but to fail.

Gordon and Ward's scheme started to unravel after they filed state-court complaints for two debtors: Robert Sofaly and Damien Malcolm. The complaints are identical in substance. Each attaches a handwritten letter using the firm's template, varying only the client's name, personal information, handwriting, and pen color. *See infra* A1–A2. And each asserts that even though the debtor had sent a letter disputing a debt to Portfolio Recovery Associates, a debt collector, Portfolio had failed to mark the debt disputed.

Portfolio removed both cases to federal court. The District Court promptly ordered an evidentiary hearing "to explore the

truth or fiction of [the] letters and the purpose behind them." App. 135. At the hearing, Gordon and Ward explained their debt-defense practice and admitted having the firm's staff handwrite, sign, and send the letters. A paralegal said he had written and signed both letters before ever speaking with Sofaly or Malcolm.

Dissatisfied, the court ordered the lawyers to show cause why it should not sanction them. But the lawyers failed. After briefing, the court dismissed both cases with prejudice under Rule 11, awarded Portfolio attorney's fees and costs under its inherent authority, and ordered the lawyers to write apology letters and attach the court's sanction order to future debt-dispute cases filed in the district. The lawyers and firm now appeal.

We review Rule 11 sanctions (and, ordinarily, inherent-authority sanctions) for abuse of discretion. *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 147 (3d Cir. 2024); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991). But because the lawyers never challenged the inherent-authority sanctions below, we review those only for plain error. *See Fashauer v. N.J. Transit Rail Ops., Inc.*, 57 F.3d 1269, 1289 (3d Cir. 1995).

## II. THE COURT PROPERLY SANCTIONED THE LAWYERS FOR THEIR HALF-TRUTHS

### A. The nonmonetary sanctions were proper under Rule 11

Rule 11 authorizes sanctioning lawyers who file pleadings for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Implicit in Rule 11 is a "duty of candor, which

attorneys violate whenever they misrepresent the evidence supporting their claims." *Wharton*, 95 F.4th at 148 (internal quotation marks omitted).

As the District Court found, Ward, Gordon, and their firm violated Rule 11 by submitting complaints based on misrepresentations and half-truths to harass Portfolio, increase its litigation costs, and gin up attorneys' fees. Fed R. Civ. P. 11(b)(1). The complaints, which the lawyers verified under penalty of perjury, claimed that Sofaly and Malcolm had personally sent Portfolio letters disputing their debts. But those letters were really written, signed, and sent by the firm. And the firm used a script with "oddly specific" and "strange" details designed to confuse. App. 21. At root, the complaints were not what they purported to be—claims by frustrated debtors who had tried unsuccessfully to dispute their debts. The letters' real goal was just the opposite: to *fail* at disputing those debts, teeing up § 1692e violations to benefit the firm. So the court did not abuse its discretion by dismissing with prejudice and imposing nonmonetary Rule 11 sanctions. *Cf. Scott v. Vantage Corp.*, 64 F.4th 462, 472–73 (3d Cir. 2023) (affirming Rule 11 sanctions where lawyer filed complaints lacking factual support with the improper purpose of forcing settlements).

The lawyers resist Rule 11 sanctions three ways, but all fall short. *First*, they stress that Sofaly and Malcolm had signed agency agreements letting the firm write and send letters for them. That is irrelevant. Agency law lets lawyers act for their clients, but it does not license deception. Put another way, agency has nothing to do with the misrepresentations the lawyers made to Portfolio and to the court; it just means that Sofaly

and Malcolm gave their lawyers permission to make those misrepresentations.

*Second*, the lawyers claim that Rule 11 does not cover such "pre-litigation correspondence." Appellants' Br. 26. That is beside the point. The complaints expressly incorporated both letters and attached them as exhibits. They are not prelitigation documents at all. Under Rule 10, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading *for all purposes*." Fed. R. Civ. P. 10(c) (emphasis added). So Rule 11 covers the letters as "pleading[s]" and "other paper[s]" filed with the court. *See King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018) (upholding Rule 11 sanctions for doctoring email attached to complaint); *see also Tejero v. Portfolio Recovery Assocs., LLC*, 955 F.3d 453, 460 (5th Cir. 2020) (noting that Rule 11 could apply to a debt-dispute letter incorporated into a complaint).

*Third*, the lawyers try to get around Rule 11 because they first filed the complaints in state court—beyond the reach of the Federal Rules. But they forfeited this argument by not raising it below. Plus, Rule 11 covers even "later advocating" a paper that was "present[ed] to the court" if "after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court." Fed. R. Civ. P. 11(b) & advisory committee's note to 1993 amendment; *see also Buster v. Greisen*, 104 F.3d 1186, 1190 n.4 (9th Cir. 1997). Both Ward and Gordon "later advocate[d]" the complaints in their response to the District Court's show cause order, as well as at the sanctions hearing, by asserting that they had done nothing wrong; that the complaints raised real FDCPA claims; and that the letters reflected genuine efforts to dispute a debt.

*See, e.g.*, App. 116–22 (Ward defending letters on agency grounds, categorically denying their falsity, and stating that everything in the letters besides the debt-dispute sentences reflected the client's "opinion"), App. 125–26 (Gordon defending scheme as proper and echoing agency arguments), App. 129 (Gordon stating that "a lot of the sentiment in [the letters] is what a lot of our clients feel generally").

And while the lawyers dredge up a handful of cases holding that Rule 11 never applies to complaints that are removed, those cases involve the pre-1993 version of Rule 11, which applied to papers only at the moment of filing. *Cf. Meyer v. U.S. Bank, N.A.*, 792 F.3d 923, 928 (8th Cir. 2015). So the District Court properly imposed the nonmonetary sanctions under Rule 11.

**B. The monetary sanctions were proper too under the court's inherent authority**

The District Court was equally right to use its inherent authority to award attorney's fees and costs. The Supreme Court has long recognized federal courts' inherent power to protect the integrity of their proceedings. *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812); *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531 (1824). That includes by awarding fees and costs against lawyers who act in bad faith or commit fraud on the court. *Chambers*, 501 U.S. at 46. That is exactly what the court did. It found that the lawyers had intentionally engineered a scheme to mislead Portfolio into violating the FDCPA—misleading the court into believing that the letters were legitimate attempts to dispute a debt in the process. App. 29; *see also* App. 21–22, 26. Such conduct "defile[s]"

the "temple of justice" and mocks the adversarial process. *Universal Oil Prods. Co. v. Root Refin. Co.*, 328 U.S. 575, 580 (1946). The court properly awarded fees and costs to compensate Portfolio for the expense of defending these contrived cases.

The lawyers offer two responses, but neither persuades. *First*, they stress that most of the "conduct at issue occurred before the existence of any court proceeding." Appellants' Br. 42. True but irrelevant. Courts may sanction prelitigation conduct "intended to improperly influence the judicial process." *Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2018); *see also Snider v. L-3 Commc'ns Vertex Aerospace, LLC*, 946 F.3d 660, 680 (5th Cir. 2019), *abrogated on other grounds by Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695, 701 (5th Cir. 2023). The letters fit that description. They were meant to sway the court by deceiving it and meddling with the record.

*Second*, the lawyers claim that the District Court should have considered its statutory authority before exercising its inherent power. True, we have emphasized, following *Chambers*, that "before utilizing its inherent powers, a district court should consider whether any Rule- or statute-based sanctions are up to the task." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 785 (3d Cir. 2001) (citation omitted). But here, the District Court *did* consider Rule 11—and concluded that it would not permit monetary sanctions. Even if the District Court erred in failing to consider alternative statutory sources of sanctioning authority, that error was harmless. As the attorneys acknowledge, 28 U.S.C. § 1927 and 15 U.S.C. § 1692k(a)(3) would have supported the same sanctions that the court imposed on its inherent authority.

* * * * *

Actions have consequences. Gordon and Ward used their clients to bring contrived lawsuits and make easy money. Even after the District Court sanctioned them and their firm, they still refuse to admit that they lied. Instead, they deflect blame, gesturing at “mistakes” and “imprecise drafting” to avoid accountability. Appellants’ Br. 20, 27, 42. We expect more from members of the bar, and we will affirm the sanctions.

## Appendix: Sofaly and Malcolm Debt-Dispute Letters

Portfolio Recovery
120 Corporate Blvd, Suite 100
Norfolk, VA 23502

8/14/2023

Dear Sir or Madam,

These are confusing times indeed and it has become more and more difficult for me to stay atop of everything as things become more complex and digital and altogether tricky. I remember when things were simple and you could count on the fingers of one hand all of the [illegible] you had to keep track of. Now [illegible] sending that [illegible] to keep track of. Now accounts and [illegible] and it is so hard to find out what's going everything is online and it is so hard to find out what's going [illegible] my finances are far more [illegible] than I [illegible] apparently my finances are far more [illegible] than I thought. I saw that your company is reporting that I owe you [illegible] thought. I see that your company is reporting that I owe you [illegible]. I am very sorry [illegible] but I just don't think that is correct. I am very sure that I have never been a customer or a client of yours and I don't [illegible] how I could owe you anything and I can't imagine how I could owe you anything and I don't think this is right. In addition have you tried to [illegible] and find a new computer or a new TV or anything like that recently? It is so hard, everything is "high tech" and there are so many letters and numbers attached to everything! I just want a TV to watch the games on Sunday and meanwhile they're trying to sell me some crazy XR-65A90K thing and I just don't understand... Thanks for the help anyway!

Sincerly,

Robert Sofaly
Robert Sofaly

DOB: [redacted]

SSN: [redacted]

Appx56

Portfolio Recovery
140 Corporate Blvd
Norfolk, VA 23502

9/28/23

Dear Sir or Madam,

These are confusing times indeed and it has become more and more difficult for me to stay on top of everything as things become more complex and digitize and altogether tricky. I remember when things were simple and you could count on the fingers of one hand all of the accounts and business dealings that you had to keep track of. Now everything is online and it is so hard to find out what's going on. For instance apparently my finances are far more involved than I thought. I saw that your company is reporting that I owe you a sum of money, but I just don't think that is correct. I am very sure that I have never been a customer or a client of yours and so I can't imagine how I could owe you anything and I don't think this is right. In addition have you tried to go and find a new computer or a new TV or anything like that recently? It is so hard, everything is "high tec" and there are so many letters and numbers attached to everything! I just want a TV to watch the games on Sunday and meanwhile they're trying to sell me some crazy XR-65A80K thing and I just don't understand... Thanks for the help anyway

Sincerely,

Damien Malcolm

Damien Malcolm

DOB [redacted]

SSN: [redacted]