**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**May 15, 2018**

**FOR THE TENTH CIRCUIT**
_____

**Elisabeth A. Shumaker**
**Clerk of Court**

XYNGULAR, a Delaware corporation,

    Plaintiff Counter Defendant - Appellee,

v.

MARC SCHENKEL, an individual,

    Defendant Counterclaimant Third-Party Plaintiff - Appellant,

v.

No. 16-4193

RUDY REVAK, an individual; MARY JULICH, an individual; STEVE KOLE, an individual; MARC WALKER, an individual; BRUCE JENSEN, an individual; DAN MURPHY, an individual; RUSSELL FLETCHER, an individual; JIM NORTHROP, an individual; ROBERT SPANGLER, an individual; SYMMETRY CORPORATION, a Delaware corporation; GLOBAL VENTURES MANAGEMENT SERVICES LLC, a Delaware limited liability company; ALYTIS, LLC; GLOBAL VENTURES PARTNERS,

    Third-Party Defendants - Appellees.
_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:12-CV-00876-RJS-PMW)**
_____

Stephen Q. Wood (Mary Anne Q. Wood, with him on the briefs), Wood Balmforth LLC, Salt Lake City, Utah, for Defendant Counterclaimant Third-Party Plaintiff - Appellant.

Mark F. James, Hatch, James & Dodge, P.C., Salt Lake City, Utah (Mitchell A. Stephens and Justin L. James, Hatch, James & Dodge, P.C., Salt Lake City, Utah, with him on the brief for Plaintiff Counter Defendant-Appellee, and Stephen E. W. Hale, Laura G. Kennedy, Matthew J. Ball, and Rita M. Cornish, Parr Brown Gee & Loveless, P.C., Salt Lake City, Utah, with him on the briefs, for Third-Party Defendants - Appellees), for Plaintiff Counter Defendant-Appellee.
_____

Before **BRISCOE**, **SEYMOUR**, and **LUCERO**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

Marc Schenkel appeals the dismissal by the district court of his claims against Xyngular Corporation and various third parties as a sanction for abuse of what he claims was pre-litigation discovery. Because we have not previously decided whether pre-litigation conduct that did not give rise to the substantive claims in a case is sanctionable by dismissal of a party's claims, the issue remains an open question in our circuit. We conclude that termination sanctions are permissible when pre-litigation conduct is aimed at manipulating the judicial process and is unrelated to the conduct that gave rise to the substantive claims in a case. Because the district

court did not abuse its discretion in concluding that these conditions were met in the present case, we exercise jurisdiction under 28 U.S.C. § 1291[1] and affirm.

## I

Xyngular Corporation, a marketing company, was formed in 2009. Schenkel worked at Xyngular from the company's inception, performing various services in exchange for an ownership interest. In 2010, the relationship between Schenkel and Xyngular's directors soured. Schenkel believed the company was paying excessive amounts to Symmetry and Global Ventures Management Services ("GVMS"),[2] two entities that were owned by the Xyngular directors and performed certain services for Xyngular. Believing that these activities amounted to illegal self-dealing, Schenkel sent Xyngular a demand letter on September 1, 2011, in which he asked the Board of Directors to investigate. He also requested that the Board pursue claims against certain Xyngular employees for misappropriation of corporate assets, corporate waste, self-dealing, and usurpation of corporate opportunities. Between mid-2010 and mid-2011, Schenkel asked Ian Swan, who was a Xyngular shareholder and IT consultant at GVMS, to gather documentation regarding the suspected self-dealing and the number of shares to which Schenkel was entitled. In October 2011, Swan began to provide Schenkel with the requested documents.

---

[1] Pursuant to Rule 54(b), the district court entered final judgment on Schenkel's counterclaims and third-party claims, permitting Schenkel to appeal its interlocutory ruling and staying the remaining proceedings pending this appeal.
[2] GVMS has since changed its name to Altyis.

3

On September 13, 2012, Xyngular filed suit against Schenkel, seeking a declaratory judgment that he was entitled to only two thousand shares and that his position as Master Distributor was terminated along with any accompanying rights. Xyngular also alleged that Schenkel committed corporate waste and misappropriated corporate resources. Schenkel responded by asserting a number of counter-claims and third-party claims. He argued that he was entitled to 2,600 shares, a permanent seat on Xyngular's Board of Directors, and a non-terminable position in Xyngular's distribution chain. He also alleged that Xyngular's directors had engaged in self-dealing, concealed the presence of lead in the company's products, and perpetuated sales tax fraud committed by Symmetry. Schenkel attached several documents he received from Swan as exhibits to his original answer, counter-claim, and third-party complaint.

Schenkel subsequently sought a temporary restraining order ("TRO") to restore his ownership interest, restore his seat on the Board of Directors, and prevent the Xyngular directors from looting the company. During a hearing on the TRO request, Xyngular's counsel questioned the propriety of Schenkel's receipt of documents from Swan. Xyngular later moved for terminating sanctions,[3] alleging that Schenkel encouraged Swan to steal documents belonging to Xyngular, Symmetry, GVMS, and others. Xyngular argued that many of these documents were

_____

[3] Specifically, Xyngular asked the court to dismiss Schenkel's claims with prejudice. We refer to such a remedy as a "terminating sanction." See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007).

kept on GVMS servers, which made Schenkel's use of them in seeking a TRO improper. Schenkel responded that Swan was authorized to access the documents, that Swan gave the documents to Schenkel voluntarily, and that Schenkel intended to use them to blow the whistle[4] on Xyngular's directors—not for the purpose of litigation. He further alleged that Xyngular had spoliated evidence and retaliated against him for whistleblowing. After the court allowed additional discovery, both parties filed cross-motions for terminating sanctions.

The district court denied Schenkel's motion. As to Xyngular's motion, the court found that Schenkel encouraged Swan to remove documents from GVMS's servers and then collected, reviewed, and used those documents in support of his claims. It further found that the documents belonged to Xyngular, GVMS, Symmetry, and various other companies. The court noted that although Swan had authorization to access the GVMS servers on which the documents were stored, there was no evidence that Swan had authority to remove the documents, possess them, or give them to third parties. Even though Schenkel's conduct occurred before litigation officially began, the court determined he had obtained the documents in anticipation of litigation and used them to support his claims. It also held that, as a Xyngular shareholder, Schenkel was not entitled to receive the documents in the manner he did because he did not use the proper procedure to inspect the company's

---

[4] Schenkel reported what he believed to be the Xyngular directors' illegal conduct to the FBI and handed over some of the documents to the agency. Additionally, Schenkel spoke with the IRS and Santa Clara County Tax Assessor about a tax fraud scheme the Xyngular directors were allegedly employing.

books and records. Finally, the court concluded that Xyngular had met its burden in showing that Schenkel acted willfully, in bad faith, and with fault. It dismissed Schenkel's claims without entering default against Schenkel on Xyngular's claims. Additionally, the court excluded the documents Schenkel obtained from Swan from evidence and awarded Xyngular and the third parties their costs and fees in bringing the sanctions motions. Schenkel timely appealed.

**II**

Schenkel first argues that the district court exceeded its inherent powers by imposing sanctions for pre-litigation conduct. He largely relies on our decision in Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758 (10th Cir. 1997), for the proposition that a district court has inherent authority to sanction only: (1) "bad faith occurring during the course of litigation that is abusive of the judicial process" and (2) "bad faith in bringing an action or in causing an action to be brought." Id. at 768 (quotation omitted).

"We review a court's imposition of sanctions under its inherent power for abuse of discretion." LaFleur v. Teen Help, 342 F.3d 1145, 1149 (10th Cir. 2003) (quotation omitted). "An abuse of discretion occurs when the district court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings." Ashby v. McKenna, 331 F.3d 1148, 1149 (10th Cir. 2003) (quotation omitted). In concluding that Schenkel's conduct was sanctionable, the district court considered not only Schenkel's misappropriation of Xyngular's documents, but also his use of them in anticipation of litigation and during the litigation itself. We agree that under

6

Towerridge, a court may exercise its inherent powers to sanction bad-faith conduct that abuses the judicial process, including pre-litigation acts that directly affect a lawsuit.

While not addressing pre-litigation conduct per se, the Supreme Court has held that "[a]s long as a party receives an appropriate hearing . . . the party may be sanctioned for abuses of process occurring beyond the courtroom." Chambers v. NASCO, Inc., 501 U.S. 32, 57 (1991). Although we held in Towerridge that "an award of attorneys' fees may not be premised solely on prelitigation conduct," we observed that the bad faith at issue in that case "lay solely in [defendant]'s prelitigation acts which gave rise to [plaintiff]'s substantive claim." Towerridge, 111 F.3d at 765, 768. By contrast, Schenkel's misconduct was not the basis for Xyngular's original suit, which stemmed from contractual disputes between the parties. Instead, the misconduct centered on his method of gathering evidence related to those substantive claims. Although it took place before litigation began, Schenkel's misconduct was intended to improperly influence the judicial process.[5]

Our sibling circuits have affirmed terminating sanctions where bad faith pre-litigation conduct extended into court proceedings. See, e.g., Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009) (affirming a sanction of dismissal for a party whose "ongoing ability to intercept

---

[5] At the time Swan provided Schenkel with the misappropriated documents, Schenkel was consulting with transactional counsel. In mid-2011, he retained and consulted with litigation counsel. And by the end of 2011, he had created a privilege log that withheld documents on the basis of "work product."

7

confidential and privileged emails" both before and during litigation would make adjudication of his claims untenable); Jackson v. Microsoft Corp., 78 F. App'x 588, 589 (9th Cir. 2003) (unpublished) (affirming a terminating sanction for a party's pre-litigation receipt of privileged information because defendant "would be unfairly prejudiced were the case to go forward").

## III

Schenkel argues that the district court, when selecting a sanction, abused its discretion because it improperly applied the factors articulated in Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992), and the clear-and-convincing-evidence standard. "[O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion." Chambers, 501 U.S. at 45. In Ehrenhaus, we established five factors that district courts should consider before imposing dismissal as a sanction:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant, . . . ; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, . . . ; and (5) the efficacy of lesser sanctions.

Ehrenhaus, 965 F.2d at 921 (quotation and citations omitted).

We have additionally held that, "[b]ecause dismissal is such a harsh sanction, it is appropriate only in cases of willfulness, bad faith, or some fault." Chavez v. City of Albuquerque, 402 F.3d 1039, 1044 (10th Cir. 2005) (quotation and brackets omitted). And although our circuit has no precedent precisely on point, persuasive authority from our sibling circuits indicates that a clear and convincing standard

8

applies. See Maynard v. Nygren, 372 F.3d 890, 891 (7th Cir. 2004); Shepherd v. Am. Broadcasting Cos., Inc., 62 F.3d 1469, 1472 (D.C. Cir. 1995); Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). We therefore apply the same standard to this case.

Schenkel contends the record lacks clear and convincing evidence that any document he received was confidential, privileged, or contained trade secrets. This argument misapprehends the district court's reasoning in imposing sanctions. Although the district court concluded that the documents comprised internal files such as board meeting minutes and employees' personal information, the inquiry that was essential to the imposition of sanctions was not whether the documents were confidential, privileged, or trade secrets—but rather, whether Schenkel acted willfully, in bad faith, and with fault in a way that abused the judicial process in collecting them. In concluding that he did so, the district court noted that Schenkel did not attempt to use the proper procedures for a shareholder to inspect corporate records, that he did so anticipating litigation, and that he gathered documents that belonged not only to Xyngular but also to his other potential opponents in this litigation. We hold that the district court did not err in concluding that this amounted to clear and convincing evidence of Schenkel's bad faith. See Archibeque v. Atchison, Topeka & Santa Fe Ry. Co., 70 F.3d 1172, 1174 (10th Cir. 1995) (concluding that a litigant exhibited bad faith warranting dismissal of her claims by deliberately "fail[ing] to cooperate in the discovery process").

9

We further hold that the district court permissibly applied the Ehrenhaus factors in determining that terminating sanctions were appropriate. First, in measuring "the degree of actual prejudice to the opposing party," LaFleur, 342 F.3d at 1151, the court noted that Schenkel collected over three hundred documents, that Xyngular and the other parties could not identify the documents that he collected, and that some of the documents contained personal information about Xyngular employees. Although some of the documents may have been subject to discovery, the district court noted that Schenkel's actions amounted to a circumvention of the discovery process and its built-in protections for parties' interests. The district court did not conclude that any of the documents were privileged, but it did note that Schenkel's actions deprived the parties of the right to argue that they were before disclosing them in the course of litigation. It also observed that Schenkel's actions led the parties to expend significant time and resources resolving the issue of the misappropriated documents.

Second, Schenkel's actions amounted to a substantial "interference with the judicial process," LaFleur, 342 F.3d at 1151, because he had, in anticipation of pursuing legal remedies, opted out of the proper discovery procedures. Schenkel bypassed the judicial process while nevertheless seeking to take advantage of it. As for the third factor—the question of Schenkel's culpability—the district court repeated its conclusion that he had acted with willfulness, bad faith, and fault, and that he "made a calculated decision to obtain the documents for strategic use in litigation."

10

The fourth factor asks "whether the litigant was warned in advance that dismissal was a likely sanction." LaFleur, 342 F.3d at 1151. The district court observed that it did not have an opportunity to warn Schenkel before he received the documents, but observed that this factor was not dispositive. See Rogers v. Andrus Transp. Servs., 502 F.3d 1147, 1152 (10th Cir. 2007) (noting that a warning under the fourth Ehrenhaus factor "is not a sine qua non for dismissal" (italics omitted)). Schenkel now argues that the district court erred in dismissing his claims without prior warning. He contends that, although some courts have imposed terminating sanctions without a warning, those cases did not involve pre-litigation misconduct. Schenkel does not, however, cite any authority holding that terminating sanctions in a case like this one necessarily require prior warning. We decline to hold that Ehrenhaus dictates such a result.

Finally, the district court addressed the question of whether lesser sanctions would be effective. In its analysis, the court reiterated the prejudice to the parties that resulted from Schenkel's circumvention of the discovery process, and noted that any sanction short of dismissal would incentivize future litigants to similarly misappropriate documents in anticipation of litigation. It concluded that dismissal was the least severe sanction that would effectively cure the prejudice, deter future misconduct, and punish Schenkel's wrongdoing. Schenkel argues that the district court erred in declining to impose a lesser sanction, describing the sanction he received as unprecedented. But Schenkel never argued before the district court that lesser alternative sanctions would be appropriate; he instead insisted that his conduct

11

was not improper at all and therefore warranted no sanction. "Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal." Turner v. Pub. Serv. Co. of Colo., 563 F.3d 1136, 1143 (10th Cir. 2009).

The imposition of sanctions is one of many matters within a trial court's broad discretion, and we reverse only when that discretion has been abused. LaFleur, 342 F.3d at 1149. In this case, the district court carefully analyzed the evidence and the parties' arguments. We do not discern any abuse of discretion in the district court's analysis.

**IV**

**AFFIRMED.**