23CA0594 Junda v Beyond 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0594 City and County of Denver District Court No. 20CV33803 Honorable Marie Avery Moses, Judge Honorable Martin F. Egelhoff, Judge Justin Junda and Big Toe Ventures, LLC, a Delaware limited liability company, Plaintiffs-Appellants and Cross-Appellees, v. Beyond Broadway, LLC d/b/a Livwell Enlightened Health, a Colorado limited liability company, Delt Services LLC, Green Brands Canada Ltd, Green Brands LLC, Green Kiwi 1 LLC, Green Kiwi 2 LLC, Green Kiwi 3 LLC, Green Kiwi 4 LLC, Green Kiwi 5 LLC, John Lord, Kiwi LLC, Livwell Holdings Inc., Livwell I LLC, Livwell II LLC, Livwell III LLC, Livwell Inc., Livwell IV LLC, Livwell IX LLC, Livwell Michigan LLC, Livwell V LLC, Livwell VI LLC, Livwell VII LLC, and Livwell VIII LLC, Defendants-Appellees and Cross-Appellants. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division II Opinion by JUDGE FOX Grove and Sullivan, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Allen Vellone Wolf Helfrich & Factor P.C., Patrick D. Vellone, Jordan Factor, Jennifer E. Schlatter, Vandana S. Koelsch, Jeremy T. Jonsen, Denver, Colorado, for Plaintiffs-Appellants and Cross-Appellees 
Wheeler Trigg O’Donnell LLP, Hugh Q. Gottschalk, Ryan W. Cooke, Rebekah L. Nickel, Denver, Colorado, for Defendants-Appellees and Cross-Appellants
1 ¶ 1 Plaintiffs and cross-appellees, Justin Junda and Big Toe Ventures, LLC (collectively, Junda), appeal the trial court’s orders dismissing, for discovery violations, their claims against defendants and cross-appellants, Beyond Broadway, LLC (d/b/a LivWell Enlightened Health), Delt Services LLC, Green Brands Canada LTD, Green Brands LLC, the five Green Kiwi LLC entities, John Lord, Kiwi LLC, LivWell Holdings Inc., the nine LivWell LLC entities, LivWell Inc., and LivWell Michigan LLC (collectively, LivWell).
1 Defendants and cross-appellants cross-appeal the trial court’s exclusion of evidence pertaining to the plaintiffs’ discovery misconduct and the trial court’s corresponding credibility determinations. We affirm the trial court’s judgment. I. Background ¶ 2 On April 12, 2019, Junda and LivWell entered into a “letter of intent” agreement detailing that Junda would raise $200 to $300 million to facilitate the expansion of LivWell’s cannabis business, with an initial $50 million required by May 31, 2019, and the next 1 Green Kiwi 1, 2, 3, 4, and 5 LLC are all defendants and cross-
appellants in this action. LivWell I, II, III, IV, V, VI, VII, VIII, and IX LLC are also all defendants and cross-appellants in this action. 
2 $50 million due by October 1, 2019. If he raised the capital, Junda would share in LivWell’s profits. But Junda failed to raise the required $50 million by the May deadline and he never raised $200 million. ¶ 3 Around the same time, Junda’s business partner, Peter van de Put (who resides in the Netherlands), subcontracted with LivWell to create an e-commerce platform for LivWell’s website (the platform) to facilitate online cannabis purchases, allegedly using software — the “Source Code”
2 — that Junda and van de Put co-developed and co-owned. The platform relied on the supposedly pre-existing Source Code and allegedly created economic value for LivWell without compensating Junda. ¶ 4 Junda and van de Put had become business partners in 2016 after signing a formal agreement (the partnership agreement) detailing that Junda and van de Put would each own 50% of any 2 This software was interchangeably referred to as the “framework” and the Source Code in the trial court. Junda testified that the Source Code resulted from an agreement with van de Put to merge various software components, written in multiple software languages and developed separately. According to Junda, van de Put merged these components into a single software language, “Ruby on Rails.” 
3 product they developed together and share any resulting profits. Junda contended that he and van de Put developed the Source Code in 2018, before working with LivWell in 2019, and each owned 50% based on the partnership agreement. ¶ 5 Later, Junda and van de Put also entered into an agreement (the delegation agreement) providing Junda the authority to pursue the litigation over the Source Code on behalf of the partnership and requiring van de Put to cooperate with, and provide any needed documents or materials to, Junda. ¶ 6 Junda’s claims against LivWell were premised on alleged violations of the letter of intent and later agreements, and LivWell’s alleged use of the Source Code. A. First Sanctions Order ¶ 7 Despite the importance of the Source Code and its development to Junda’s claims, Junda did not provide a copy of the Source Code in his initial disclosures, nor did he do so when LivWell requested discovery on the platform’s development. Junda did, however, provide a copy of a “stand-alone” version of the Source Code — one that existed apart from the platform — to his own expert for analysis. As a result, LivWell twice moved for 
4 C.R.C.P. 37(a)(2) sanctions against Junda for his failure to provide information and documents related to the Source Code. ¶ 8 Regarding the first motion for sanctions, the trial court found Junda “deliberately withheld this critical information” and excluded evidence of the stand-alone Source Code. However, the sanction was later vacated, by agreement of the parties, when trial was continued. B. Second Sanctions Order ¶ 9 In August 2022, the parties notified the trial court of another discovery impasse concerning the Source Code. LivWell sought a “forensically acquired copy of the Source Code”
3 and the hard drive it was stored on to discover metadata information and learn more about its “creation, storage, and modification” — matters in dispute. LivWell expressed concern because it learned that in 2021 — during the litigation — van de Put destroyed the hard drive storing a version of the Source Code allegedly created in 2018, before his and 3 “Forensic imaging makes an exact copy of a computer hard drive without destroying the original hard drive. A computer expert can search the image as if it were the computer without depriving the computer’s owner of his or her machine.” Gateway Logistics, Inc. v. Smay, 2013 CO 25, ¶ 6 n.3. 
5 Junda’s work with LivWell, and transferred the Source Code files to a new laptop. ¶ 10 The trial court held a status conference to discuss the impasse on August 26, 2022. Junda’s counsel, arguing against the forensic acquisition, stated: “I want to be very clear, there has never been a hard drive with this code that shows its development through the development process. It simply doesn’t exist.” After the trial court expressed confusion, since briefing suggested that a hard drive existed, Junda’s counsel explained: “What exists, or what existed on the 2018 laptop, and now exists in the laptop in the Netherlands today is a copy of the file that was transmitted by Mr. van de Put from the computer that was upgraded to the one he has now.” Junda’s counsel also argued that requesting the full hard drive would unduly intrude on van de Put’s privacy because his laptop contained personal and other business matters. ¶ 11 The trial court found that the information should have been disclosed in discovery because it was directly relevant to Junda’s Source Code-related claims. Further, it found that the need for a forensic acquisition of the hard drive was “particularly acute” because Junda’s and van de Put’s deposition testimony concerning 
6 the hard drive was “extremely evasive,” and it remained unclear if and when the hard drive was destroyed. Thus, the trial court granted LivWell’s request for forensic acquisition of the hard drive and the Source Code. ¶ 12 In October 2022, Junda’s counsel notified the court that she could no longer represent Junda. And, pursuant to Colo. RPC 3.3(a)(3), she notified the trial court that — contrary to what she said at the August 26 hearing — she no longer had good faith to believe that van de Put’s hard drive contained personal information or that a forensic acquisition would invade his privacy. She also noted that Junda’s declaration that there was never a hard drive containing only the Source Code was false. Finally, she noted that van de Put’s declaration that he had “securely disabled” the old 2018 computer after transferring the files to a new computer in 2021 was false. The November trial was later continued to March 2023, allowing Junda to retain new counsel. ¶ 13 LivWell next moved for sanctions and to terminate Junda’s claims based on the alleged fabrication of electronic evidence. LivWell alleged that Junda and van de Put (1) purchased a new computer after the trial court ordered a forensic acquisition of the 
7 Source Code and hard drive; (2) transferred a copy of the Source Code to it and manipulated the operating system to show the files had been added in 2021; and (3) manipulated the Source Code files themselves to show they had been edited in 2018 (when Junda alleged the Source Code was created). ¶ 14 In response, Junda argued that sanctions were inappropriate because he had never possessed or controlled the laptop and was not responsible for a nonparty’s actions. Moreover, Junda claimed he had never communicated with or instructed van de Put concerning how to provide the laptop — and that, instead, Junda’s prior counsel spoke with van de Put about complying with the court’s order. ¶ 15 Asserting that Junda impliedly waived his attorney-client privilege by faulting former counsel for the laptop’s production, LivWell subpoenaed Junda’s former counsel to testify concerning her communications with Junda and van de Put. The trial court agreed with LivWell that Junda waived his attorney-client privilege. ¶ 16 The trial court held an evidentiary hearing on January 13, 2023, to learn if and how the alleged fabrication occurred. Junda’s prior counsel testified that she informed Junda and van de Put that 
8 the trial court had ordered a forensic acquisition of van de Put’s personal computer, with his personal files and the hard drive containing the Source Code, and failure to comply could result in serious sanctions, including striking Junda’s claims. Prior counsel also testified that van de Put told her and Junda that the 2018 computer was disposed of by putting a “nail through the hard drive” after its data was transferred to a new computer. ¶ 17 Prior counsel further testified that she believed Junda was involved with the issues leading to noncompliance with the court’s order, given his “substantive” comments after the trial court’s order. Prior counsel detailed that she had a virtual meeting with Junda and van de Put — who were both upset with the ruling — to further discuss the order and reiterate its requirements. Prior counsel also noted that Junda suggested — unprompted — that there was nothing in van de Put’s computer that could not be gleaned from the Source Code files themselves. Thus, they “could buy another computer and put the files on it and then get the same information,” which prior counsel made clear was not an option. Unbeknownst to prior counsel, on the same day the court’s August 
9 26, 2022, order was issued, van de Put had already purchased a new MacBook laptop. ¶ 18 Soon after, van de Put informed prior counsel that the requested laptop had been shipped for forensic acquisition. Upon its arrival, prior counsel learned that the laptop had a “small data profile,” meaning it had very little information on it. This contradicted van de Put’s earlier claim that the laptop contained a large amount of personal and other business files, so prior counsel asked Junda and van de Put about the inconsistency. ¶ 19 Van de Put informed prior counsel that she was “mistaken” — the laptop contained only the stand-alone Source Code, it had never contained his personal or other business files. Van de Put now said that he purchased the laptop in February 2021, and the reason it only contained the Source Code was because he purchased the laptop while still working with LivWell to develop the platform, but once he was terminated he decided not to transfer additional files. Junda expressed no surprise at this revelation. ¶ 20 Prior counsel testified that Junda “was one of the most involved client[s] I’ve ever worked with,” that he was extensively involved in discovery discussions, and that she believed that Junda 
10 was actively speaking with van de Put outside of her presence. Indeed, LivWell’s counsel pointed to disclosed emails with prior counsel indicating that Junda and van de Put communicated about discovery issues and the Source Code, and that Junda knew about prior counsel’s communications with van de Put. ¶ 21 A defense expert in computer forensics and software engineering analysis, Dr. Gianturco, also testified about the analysis of the laptop. Gianturco first explained that a forensic acquisition was a thorough analysis of a computer, detailing that it “provides all of the information generated by all of the logs and services and processes running on the computer the entire time the computer was in operation.” ¶ 22 From his analysis, Gianturco was able to conclude that “the computer had been manipulated explicitly . . . to make it appear that actions happened when they had not, in fact, happened.” Specifically, the Source Code was transferred to the computer shortly after first becoming operational, and it was one of the few items loaded onto the computer. It was evident that a user named “Peter” had taken deliberate steps to make it seem like the Source Code files were transferred to the computer in February 2021 
11 instead of September 2022, by changing the operating system time to February 2021, transferring the files, and then resetting the time back. ¶ 23 Learning this, Gianturco next examined the Source Code files and discovered that, while the metadata for the files indicated that they were edited on separate dates across 2018, 441 of 442 files showed that they had been “last modified” at the exact same time of day, 5:52 a.m., which was highly unlikely for developers creating software over time. The Source Code files also appeared to have been deliberately manipulated to show they were created in 2018 (consistent with Junda’s case theory). ¶ 24 When asked what could explain these anomalies, Gianturco stated that he was “100 percent sure” that the computer had been manipulated and could think of only one explanation for why each Source Code file showed that it was modified at the exact same time — “fraud.” ¶ 25 Junda testified that he had never been in possession of the Source Code (or a copy), that van de Put was the “only holder” of the code, and that he did not know van de Put had a stand-alone copy of the Source Code until February 2022. Junda also testified 
12 that he never asked van de Put to provide the requested computer pursuant to his authority in the delegation agreement, arguing this was counsel’s job instead. ¶ 26 On January 23, 2023, the trial court issued a detailed and thorough order siding with LivWell and dismissing Junda’s claims with prejudice. The trial court found that the laptop provided for forensic acquisition, purchased the day of the court’s August 26, 2022, order, was “intentionally and nefariously manipulated.” This manipulation was designed to make it falsely appear that the Source Code files had been transferred to the computer in February 2021 to be consistent with Junda and van de Put’s claims. The trial court also found that the last-modified time stamps on the files, modified to make it appear that the files pre-dated van de Put and Junda’s 2019 work with LivWell, were also intentionally manipulated. The trial court thus found, given these fabrications and the lack of supporting contemporaneous documentation about the Source Code’s development, that “Junda’s testimony and declarations regarding his and van de Put’s development of the Source Code prior to 2019 lacks all credibility.” 
13 ¶ 27 The trial court also found that Junda was “personally and actively” involved in the decisions leading to van de Put’s production of the manipulated computer. The trial court observed that Junda’s communications indicated he was speaking frequently with counsel and van de Put, and communicated with van de Put separately. Further, Junda’s claimed ignorance of the requirements of the court’s August 26 order lacked credibility, and his failure to ask van de Put to comply with the order indicated personal culpability. ¶ 28 As a result, the trial court found there was clear and convincing evidence that plaintiffs fabricated the computer and the Source Code file evidence, and that Junda was personally involved. The court concluded that dismissing all of Junda’s claims was the only appropriate sanction. It noted that “Plaintiffs’ conduct has prejudiced LivWell, tainted the judicial process, and must be punished severely — not just to punish Plaintiffs, but to remedy the prejudice to LivWell, and to deter future litigants from engaging in such egregious conduct.” ¶ 29 Finally, the trial court found that even if Junda was not personally involved in the fabrication, van de Put’s actions could be imputed to Junda. Junda had control over the Source Code and 
14 computer because the delegation agreement gave him explicit authority to require van de Put to produce both. Further, the trial court noted that every partner serves as an agent of a partnership; thus, because of their partnership agreement, van de Put acted as Junda’s agent when he fabricated the evidence. C. LivWell’s Counterclaims ¶ 30 With Junda’s claims dismissed, the only remaining issues for trial were LivWell’s fraud counterclaims — claiming that Junda misrepresented that he had ready investors and would invest millions of dollars of his own money into LivWell.
4 LivWell argued in its trial brief that Junda’s fabrication of evidence, and the court’s determinations of his credibility as detailed in the sanctions order, should be admissible under CRE 608(b) and CRE 404(b) to impeach 4 Between the second sanctions order and trial, Judge Moses rotated off the case and Judge Egelhoff presided over the trial. LivWell raised six counterclaims in its answer to the fourth amended complaint, but later withdrew three of them. The withdrawn claims were formally resolved in Junda’s favor by a post-
trial final judgment order issued May 9, 2023. This left only LivWell’s claims for “fraudulent inducement/nondisclosure,” “fraudulent inducement/false representation,” and “promissory fraud.” On March 15, 2023, partway through trial, the trial court disposed of the fraudulent inducement/nondisclosure claim by granting Junda’s motion for directed verdict. 
15 Junda’s credibility. The trial court excluded any evidence of “added value” Junda allegedly provided LivWell through the Source Code as a defense to the remaining fraud counterclaims, but it prevented LivWell from introducing the judicial determinations in the sanctions order. ¶ 31 During trial LivWell sought to ask Junda if his “claims for compensation” were dismissed, but the trial court rejected the request as irrelevant and overly prejudicial. Once the jury left for the day, LivWell brought up the CRE 608(b) contention again and asked permission to challenge Junda’s credibility via the sanctions order. ¶ 32 The trial court requested an offer of proof detailing what LivWell wanted to ask, noting that introducing the court’s credibility determinations and the sanctions order would be “extraordinarily prejudicial.” The court expressed a “strong inclination” against admission. In LivWell’s offer of proof, it represented that it wanted to ask three specific questions: Q: In the last five years, has a court concluded that your testimony lacked credibility? . . . 
16 Q: In the last five years, has a court concluded you intentionally and repeatedly made false representations to the court? . . . Q: In the last five years, has a court concluded that you willfully falsified evidence? ¶ 33 The next day, Junda rested without presenting a defense and the jury found in Junda’s favor. ¶ 34 This appeal and cross-appeal soon followed. II. Analysis ¶ 35 On appeal, Junda raises three claims. He argues that the trial court erred by (1) finding that he waived his attorney-client privilege by delegating the collection of discovery evidence to counsel; (2) ordering Junda to produce van de Put’s laptop; and (3) dismissing his claims after finding he was personally culpable for the fabrication and imputing van de Put’s acts to him as his agent. ¶ 36 On cross-appeal, LivWell argues that the trial court erred by excluding the prior judicial determination that Junda fabricated evidence and lacked credibility. 
17 A. The Trial Court Did Not Err by Finding Junda Impliedly Waived Attorney-Client Privilege ¶ 37 Junda first contends that the trial court erred by holding he impliedly waived his attorney-client privilege with prior counsel. Junda argues that (1) he never placed his communications with prior counsel “at issue” by merely denying any involvement in fabricating evidence because this was unconnected to counsel’s advice; (2) “a waiver cannot happen in the absence of a privileged communication”; and (3) the trial court’s findings that he was involved in the laptop’s production depended on improperly disclosed privileged communications. ¶ 38 LivWell responds that Junda placed his communications with prior counsel at issue by claiming he was not involved in the production of the laptop and that his prior counsel was the only person who worked with van de Put. In the alternative, LivWell argues that any error was harmless because most of the testimony at the sanctions hearing relied on nonprivileged communications. 1. Standard of Review and Preservation ¶ 39 A trial court’s discovery rulings, including determinations of whether communications are protected by the attorney-client 
18 privilege, are reviewed for an abuse of discretion. In re People in Interest of J.P., 2023 CO 57, ¶ 17; see also Sentinel Colo. v. Rodriguez, 2023 COA 118, ¶ 35 (“We review a district court’s conclusions regarding the attorney-client privilege for an abuse of discretion. But we review application of the attorney-client privilege de novo.”) (citations omitted). “A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law.” J.P., ¶ 17 (quoting People in Interest of E.B., 2022 CO 55, ¶ 14). ¶ 40 “To preserve an issue for appeal, all that is necessary is that the issue ‘be brought to the attention of the trial court and that the court be given an opportunity to rule on it.’” Dill v. Rembrandt Grp., Inc., 2020 COA 69, ¶ 24 (quoting Berra v. Springer & Steinberg, P.C., 251 P.3d 567, 570 (Colo. App. 2010)). This issue was preserved. 2. Legal Framework and Analysis ¶ 41 “The attorney-client privilege shields from disclosure communications between an attorney and a client relating to legal advice,” but as “holder” of the privilege a client “may waive this privilege either expressly or impliedly.” State Farm Fire & Cas. Co. v. Griggs, 2018 CO 50, ¶ 16. “[A] client impliedly waives the 
19 privilege when he or she (1) discloses privileged communications to a third party or (2) asserts a claim or defense focusing on advice given by the attorney, thereby placing the allegedly privileged communications at issue.” Id. The second means of implied waiver, “at issue” waiver, is challenged here. ¶ 42 Privileged communications are not placed at issue when an opposing party makes a claim that implicates such communications; rather, the holder of the privilege must assert a claim or defense that puts their privileged communications at issue. See Rademacher v. Greschler, 2020 CO 4, ¶¶ 30, 34. To place communications “at issue” and waive the privilege, it is not enough “that privileged information might become relevant in a given lawsuit.” Griggs, ¶ 17. Further, “the mere denial of an allegation does not waive the attorney-client privilege.” Id. at ¶ 20. [T]o establish an implied waiver based on the assertion of a claim or defense, a party must show that the client asserted a claim or defense that depends on privileged information. Such a rule makes sense because as a matter of simple fairness, a party should not be permitted to assert a claim or defense that depends on privileged information while simultaneously relying on the privilege to keep that same information from the opposing party. 
20 Id. at ¶ 18 (emphasis added) (citations omitted). ¶ 43 For example, in Mountain States Telephone & Telegraph Co. v. DiFede, the Colorado Supreme Court held that a plaintiff had waived her attorney-client privilege by placing her communications with her attorney at issue. 780 P.2d 533, 542-44 (Colo. 1989). There, the plaintiff made a claim for “fraud-in-the-inducement” after she alleged that she only signed a separation agreement because of incorrect legal assurances from her then husband’s attorney. Id. The defendants raised an affirmative defense, arguing that her reliance on her husband’s attorney’s advice was unreasonable given that she met with her own attorney ten days later. Id. at 535, 542-
44. ¶ 44 The court held that because the plaintiff had placed her knowledge, or lack of knowledge, of the correct legal standard at issue, she had impliedly waived her attorney-client privilege over her communications with her attorney on this discrete question. Id. at 544. It would have been unfair for the plaintiff to “thrust her lack of knowledge of the correct state of the law into the litigation by her claim of fraudulent inducement while simultaneously retaining 
21 the attorney-client privilege to frustrate attempts” by the defendants to prove her knowledge and negate her claim. Id. ¶ 45 Here, Junda explicitly argued that LivWell could not prove he had personal knowledge of, or involvement in, producing the fabricated evidence, and, as such, sanctions were inappropriate. But Junda clearly placed his communications with counsel at issue by making his prior counsel’s communications, and his knowledge or lack thereof, his primary defense to the sanctions motion. See Griggs, ¶ 18. Indeed, Junda argued that only his counsel knew of the discussions with van de Put leading to the fabrication. Junda averred that Mr. Junda had no personal involvement in the production of Mr. van de Put’s computer to Forensic Pursuit. Rather, his prior counsel exclusively facilitated the production from Mr. van de Put to Forensic Pursuit. . . . Attempting to comply as best they could with the Court’s order, Plaintiffs instructed their prior counsel to contact Mr. van de Put and facilitate the court ordered production. Mr. Junda had no contact with Mr. van de Put during this time and relied on his former legal counsel to handle the matter. . . . Plaintiffs’ former counsel . . . had several conversations with Mr. van de Put, urging Mr. 
22 van de Put to voluntarily produce the Mac Pro. . . . Defendants’ expert’s forensic analysis is clear that whatever Mr. van de Put did, he did in the Netherlands on his own volition and/or per the instructions of Plaintiffs’ prior counsel. . . . Mr. Junda will testify that he had no involvement in Mr. van de Put’s production of the computer drive and relied entirely on his former counsel. . . . Mr. Junda had no personal involvement in the efforts to persuade Mr. van de Put to send a device containing the Source Code to Forensic Pursuit. Those conversations transpired entirely amongst Mr. van de Put, [prior counsel], and [expert]. . . . Plaintiffs should not receive the civil-case equivalent of the death penalty for what appears to be an error caused, in substantial part, by a miscommunication between [prior counsel] and Mr. van de Put. . . . (Emphases added.) ¶ 46 To summarize these arguments, Junda claimed that he had no knowledge of the fabrication and blamed it on a miscommunication between his prior counsel and van de Put. It is difficult to imagine a clearer example of a litigant placing communications, or lack thereof, with counsel at issue. 
23 ¶ 47 Much like in Mountain States, Junda’s defense to the sanctions motion was that he had no knowledge of or involvement in the fabrication; thus his defense depended on his knowledge (or lack thereof). See 780 P.2d at 542-44; Griggs, ¶ 18. Junda cannot simultaneously blame the fabrication on miscommunication or misconduct by counsel, invoke the attorney-client privilege, and prevent LivWell from testing his claims. See Mountain States, 780 P.2d at 544. ¶ 48 Junda’s argument that he did not place a communication at issue is unavailing. In Mountain States the court recognized that claiming a lack of knowledge could also implicate the at issue-
waiver. Id. at 543-44 (recognizing unfairness of a client injecting their “knowledge or lack of knowledge” into a claim, while also retaining attorney-client privilege to frustrate the opposing party’s attempts to prove her knowledge and prevail against her claim) (emphasis added). ¶ 49 Accordingly, the trial court did not abuse its discretion by concluding that Junda impliedly waived his attorney-client privilege and by relying, in part, on those communications when sanctioning him. See Griggs, ¶ 16. 
24 B. The Trial Court Did Not Err by Ordering the Production and Forensic Acquisition of the Laptop ¶ 50 Junda argues that the trial court erred by ordering Junda to produce van de Put’s laptop when (1) he did not possess, have custody of, or control over it; and (2) the ordered production invaded the privacy interests of a nonparty, van de Put, without a compelling need. ¶ 51 LivWell contends that Junda failed to preserve the argument that Junda had no possession, custody, or control over the laptop. But LivWell argues that even if Junda had preserved this contention, he had control over the laptop because the delegation agreement authorized him to order its production. LivWell also argues that the trial court properly considered van de Put’s privacy interests and balanced them appropriately with its need for the discovery. 1. Standard of Review and Preservation ¶ 52 We review a trial court’s order compelling discovery, including ordering the production of electronically stored information and the imaging of devices, for an abuse of discretion. Gateway Logistics, Inc. v. Smay, 2013 CO 25, ¶ 13. 
25 ¶ 53 Junda’s privacy argument was preserved. To LivWell’s preservation point on the possession, custody, and control argument, it is correct that Junda failed to raise this issue ahead of the discovery order, but it was part of Junda’s argument against sanctions. Thus, it was presented to the trial court. See Dill, ¶ 24. 2. Legal Framework and Analysis a. van de Put’s Privacy Interests ¶ 54 The scope of discovery is broad and, except for information protected by privilege, if a matter is relevant to a claim or defense, a party may obtain discovery to unearth admissible evidence. Gateway, ¶ 15. But discovery is not unlimited, and if “a party invokes the right to confidentiality or privacy, the trial court must balance the policy in favor of broad disclosure with the individual’s right to keep personal information private.” Id. ¶ 55 “The party requesting the information must always first prove that the information requested is relevant to the subject of the action. Next, the party opposing the discovery request must show that it has a legitimate expectation that the requested materials or information is confidential and will not be disclosed.” Id. (quoting In re Dist. Ct., 256 P.3d 687, 691 (Colo. 2011)). 
26 ¶ 56 If a trial court finds that the opposing party has a “legitimate expectation of privacy” in the materials or documents requested, then [u]nder our balancing test, the trial court must require the requesting party to prove that it has a compelling need for the information, that the information being sought is not available from other sources, and that it is using the least intrusive means to obtain the information . . . . The trial court’s findings of fact under these factors must be apparent from its order. Id. ¶ 57 “[I]ndividuals have a privacy interest in their electronically stored information, including personal correspondence and records, on their computers, smartphones, and other electronic storage devices.” Id. at ¶ 19. Therefore, discovery requests that seek electronically stored information on an individual’s electronic devices — over an invocation of their right to privacy — require findings of fact in the court’s order demonstrating that the order meets the requisite balancing test. Id. at ¶¶ 15, 19. If the trial court orders discovery of materials held by a nonparty to the litigation, their status as a nonparty typically “weighs against disclosure because the nonparty does not have an interest in the 
27 outcome of the litigation . . . [and] lacks the expectation of being required to turn information over to an opposing party.” Id. at ¶ 17. ¶ 58 The court compelled forensic imaging of van de Put’s laptop and, recognizing the need for additional privacy protections, later granted a joint amended discovery protection order. It is apparent from this record that the trial court considered the proper factors before issuing its order. ¶ 59 The court acknowledged that LivWell demonstrated the need for forensic acquisition of the hard drive. See id. at ¶ 15. And to the extent van de Put had a legitimate privacy interest in his personal information stored electronically on his devices, the trial court recognized it by granting a protective order.
5 Id. at ¶ 19. ¶ 60 The trial court noted that the need for a forensic acquisition of the hard drive itself was “particularly acute” because Junda’s and 5 Van de Put’s status as a nonparty would, under normal circumstances, weigh against disclosure. See Gateway, ¶ 17. But van de Put had reason to expect that he might have to produce information to an opposing party because of the delegation agreement. He explicitly granted Junda the authority to litigate a case focused on the development of their software on behalf of the partnership. And van de Put was required under the delegation agreement to provide any documents or materials Junda might reasonably request. Further, as a co-owner of the Source Code, he stood to gain if Junda prevailed in the litigation. 
28 van de Put’s deposition testimony regarding whether the computer was destroyed was, according to the court, “extremely evasive.” See id. at ¶ 15. The trial court also recognized, based on LivWell’s expert declaration, that Junda’s suggested alternative to a forensic acquisition would not provide information on how the Source Code files were altered and handled over time. And the production order was only issued after Junda said that there was no contemporary documentation or materials to otherwise provide information on the development of the Source Code. ¶ 61 Thus, because only a forensic acquisition of the hard drive itself could provide the relevant and crucial information LivWell needed, there was a compelling need for the discovery and no other means to obtain the needed information. Furthermore, the court’s protective order aimed to protect van de Put’s privacy interests. ¶ 62 Because it is apparent from the trial court’s orders that it considered the appropriate factors when balancing the need for the discovery and van de Put’s privacy interests, it did not abuse its discretion by ordering the production and forensic acquisition of van de Put’s laptop. See id. 
29 b. Junda’s Control Over the Laptop ¶ 63 The record refutes Junda’s argument that the trial court erred by ordering production of the laptop because it was not in his possession, custody, or control. ¶ 64 C.R.C.P. 26(a)(1)(B) requires a party to provide any documents or materials relevant to their claims or defenses within their “possession, custody or control.” As relevant here, materials under the “control” of a litigant are those that are obtainable by the order or direction of the litigant. Michael v. John Hancock Mut. Life Ins. Co., 138 Colo. 450, 451-55, 334 P.2d 1090, 1092-93 (1959). ¶ 65 Here, paragraph 4 of the delegation agreement gave Junda authority to request and obtain materials from van de Put that Junda reasonably required to pursue the litigation. Thus, Junda effectively had “control” over the laptop and hard drive with the Source Code because he could legally direct van de Put to produce the laptop pursuant to a contractual obligation. Id. Therefore, the court did not abuse its discretion by ordering the operative laptop’s production for forensic acquisition. 
30 C. The Trial Court Did Not Err by Dismissing Junda’s Claims ¶ 66 Junda lastly argues that the court erred by dismissing his claims against LivWell as a sanction. According to Junda, dismissal was a disproportionate sanction because there was no clear and convincing evidence that he conspired with van de Put to falsify evidence. Junda also argues that van de Put did not act as his agent because he had no control over van de Put, van de Put was a nonparty, and van de Put’s interests were adverse to Junda’s. We are not persuaded. 1. Standard of Review and Preservation ¶ 67 “We review a trial court’s imposition of sanctions under C.R.C.P. 37 for abuse of discretion.” Pinkstaff v. Black & Decker (U.S.) Inc., 211 P.3d 698, 702 (Colo. 2009). “A trial court has considerable discretion to determine whether sanctions should be imposed for discovery violations and what those sanctions should be.” Prefer v. PharmNetRx, LLC, 18 P.3d 844, 849 (Colo. App. 2000). The trial court’s findings of fact and witness credibility determinations may not be disturbed on appeal unless they are clearly erroneous and lack support in the record, and we may not substitute our own findings of fact for those of the trial court. See 
31 M.D.C./Wood, Inc. v. Mortimer, 866 P.2d 1380, 1383-84 (Colo. 1994). ¶ 68 Because Junda did not preserve the argument that van de Put’s interests were contrary to his, we decline to address that contention. See Gestner v. Gestner, 2024 COA 55, ¶ 18 (“In civil cases, issues not raised in or decided by the district court generally will not be addressed for the first time on appeal.”). Junda’s other arguments are preserved. See Dill, ¶ 24. 2. Legal Framework and Analysis ¶ 69 C.R.C.P. 37(b)(2) provides that a trial court may sanction a party that “fails to obey an order to provide or permit discovery.” Sanctions can range from deeming certain facts as established, to “dismissing the action or proceeding or any part thereof,” or entering default judgment against the noncompliant party. C.R.C.P. 37(b)(2)(A)-(C). Generally, sanctions under C.R.C.P. 37 “should be applied in a manner that effectuates proportionality between the sanction imposed and the culpability of the disobedient party.” . . . When discovery abuses are alleged, courts should carefully examine whether there is any basis for the allegation and, if sanctions are warranted, impose the least severe sanction that will 
32 ensure there is full compliance with a court’s discovery orders and is commensurate with the prejudice caused to the opposing party. Pinkstaff, 211 P.3d at 702 (quoting Kwik Way Stores, Inc. v. Caldwell, 745 P.2d 672, 677 (Colo. 1987)). ¶ 70 “Dismissal, the severest form of sanction, is generally appropriate only for willful or deliberate disobedience of discovery rules, flagrant disregard of a party’s discovery obligations, or a substantial deviation from reasonable care in complying with those obligations.” Prefer, 18 P.3d at 850. Thus, dismissal should only be ordered in “extreme cases.”
6 Compare Lewis v. J.C. Penney Co., 841 P.2d 385, 387 (Colo. App. 1992) (holding that a failure to pay fees was not grounds for dismissal where the failure was not willful or in bad faith), with Cornelius v. River Ridge Ranch Landowners Ass’n, 202 P.3d 564, 571 (Colo. 2009) (Because “the nondisclosure 6 Junda contends that the trial court must find that the dismissal sanction is required by clear and convincing evidence, citing nonbinding federal cases that take this position. See Xyngular v. Schenkel, 890 F.3d 868, 873-74 (10th Cir. 2018); Kenno v. Colo.’s Governor’s Off. of Info. Tech., Civ. A. No. 19-cv-00165-MEH, 2021 WL 2682619, at *13 (D. Colo. June 30, 2021) (unpublished opinion). The trial court declined to take a position on this matter because clear and convincing evidence supported the imposition of sanctions regardless. We do the same here. 
33 in this case was so extensive that the parties and the water court had virtually no specific information,” it merited dismissal of the case.), and Sheid v. Hewlett Packard, 826 P.2d 396, 399 (Colo. App. 1991) (dismissal appropriate where the plaintiff refused to comply with three orders directing the plaintiff to sign medical releases despite the tribunal’s efforts to stay the proceedings pending compliance). ¶ 71 The court dismissed Junda’s claims against LivWell based on its findings that (1) Junda was personally involved in and culpable for the willful fabrication of the evidence and (2) van de Put’s conduct could be imputed to Junda under agency principles. a. The Record Shows That Junda was Personally Culpable ¶ 72 Because the record supports the trial court’s findings of clear and convincing evidence that Junda was personally involved in the fabrication of the laptop and the Source Code files evidence, we may not disturb these factual findings on appeal. See Mortimer, 866 P.2d at 1383-84. Further, the trial court found that Junda’s testimony at the January 13, 2023, hearing lacked credibility, stating that “Junda was evasive, deceptive, self-serving, and 
34 dishonest.” We may not disturb the trial court’s credibility determinations. Id. ¶ 73 Junda countered that he was not personally involved in the laptop’s production and had no knowledge of van de Put’s actions. But the trial court pointed to contrary evidence. ¶ 74 For example, Junda’s prior counsel testified that she extensively communicated with Junda about the trial court’s August 26, 2022, discovery order and stated explicitly that Junda was “one of the most involved client[s] I’ve ever worked with.” And the trial court pointed to prior counsel’s testimony that Junda had provided “substantive comments” concerning compliance with the production order, and had participated in a virtual meeting with prior counsel and van de Put discussing the subject. The trial court also highlighted emails clearly showing that Junda communicated with van de Put without counsel. ¶ 75 The trial court further noted that Junda expressed no surprise at the revelation that the produced laptop had evidently never contained any of van de Put’s personal data and instead only contained the Source Code. The trial court found that Junda’s lack of surprise indicated that he knew of the fabrication. 
35 ¶ 76 Furthermore, while not referenced in the trial court’s order, prior counsel testified that Junda, unprompted, had essentially suggested that he could do exactly what occurred here (send a different laptop with just the Source Code on it) and that a forensic acquisition would produce the same information concerning the Source Code files as van de Put’s personal computer. ¶ 77 And despite the centrality of the Source Code, including when it was created, and prior counsel’s warning that failing to comply could lead to a dismissal of his claims, Junda neither attempted to comply with the trial court’s order nor asked van de Put to comply. The trial court found that this was “compelling evidence that Junda never intended to comply with [the August 26 order] and that he participated in the scheme to submit the Dummy Computer.” ¶ 78 We may not disturb these factual findings, which all enjoy record support. The record contains clear and convincing evidence that Junda was personally involved in the fabrication (or aware of it and did nothing to prevent or remedy it). ¶ 79 While dismissal is only appropriate in “extreme cases” for “willful disobedience, a flagrant disregard of that party’s discovery obligations, or a substantial deviation from reasonable care in 
36 complying with those obligations,” this is that extreme case warranting dismissal, because Junda willfully disobeyed the discovery rules, his discovery obligations, and the trial court’s order. J.C. Penney Co., 841 P.2d at 387; Prefer, 18 P.3d at 850. ¶ 80 The outright fabrication of evidence — evidence that was crucial to the case — is an egregious form of discovery abuse. Such behavior forces the trial court and the opposing party to question the veracity of every claim and document the offending party provides and greatly undermines the discovery process. See People v. Layton, 494 P.3d 693, 726 (Colo. O.P.D.J. 2021) (noting that “proper functioning of the adversary system depends on fair competition, which itself is safeguarded by prohibitions against obstructive tactics in discovery”). It was entirely reasonable for the court to dismiss Junda’s claims after concluding this was the most appropriate sanction available to account for Junda’s culpability and the corresponding prejudice to LivWell. See Pinkstaff, 211 P.3d at 702. ¶ 81 Thus, the trial court did not abuse its broad discretion by dismissing Junda’s claims under C.R.C.P. 37. See Prefer, 18 P.3d at 847. The sanction was within the trial court’s discretion to 
37 prevent abuses of the judicial process. See Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991) (A trial court has discretion to “fashion an appropriate sanction for conduct which abuses the judicial process,” including the “outright dismissal of a lawsuit.”). b. van de Put’s Actions Can be Imputed to Junda ¶ 82 The trial court pointed out that there are no Colorado cases that address whether a party is responsible for an agent’s destruction of evidence. But it noted that a number of federal courts agree that when an agent of a partnership destroys or fails to preserve evidence, the resulting sanctions are imputable to the principal. See Nucor Corp. v. Bell, 251 F.R.D. 191, 196-99 (D.S.C. 2008); N.J. Mfrs. Ins. Co. v. Hearth & Home Techs., Inc., Civ. A. No. 3:06-CV-2234, 2008 WL 2571227, at *7 (M.D. Pa. June 25, 2008) (unpublished opinion); Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 523 n.16 (D. Md. 2009); Am. Builders & Contractors Supply Co. v. Roofers Mart, Inc., No. 1:11-CV-19 (CEJ), 2012 WL 2992627, at *6 (E.D. Mo. July 20, 2012) (unpublished opinion); Gemsa Enters., LLC v. Specialty Foods of Ala., Inc., No. LA CV13-
00729 JAK (RZX), 2015 WL 12746220, at *9 (C.D. Cal. Feb. 10, 2015) (unpublished opinion); Edifecs, Inc. v. Welltok, Inc., No. C18-
38 1086JLR, 2019 WL 5862771, at *4 (W.D. Wash. Nov. 8, 2019) (unpublished opinion), aff’d, 840 F. App’x 224 (9th Cir. 2021). ¶ 83 We are persuaded by the reasoning of these federal cases and therefore hold that a party may be sanctioned for their agent’s spoilation, failure to preserve, or outright destruction or fabrication of evidence. Indeed, in Michael the Colorado Supreme Court explained that the scope of “control” in C.R.C.P. 26(a)(1) and 34(a)(1) discovery issues covers materials “which are obtainable by the order or direction of the litigant.” 138 Colo. at 454, 334 P.2d at 1093. A party’s agents are typically under their control and a party can order or direct the agents to produce, or protect, relevant evidence. Thus, relevant discovery materials held by a party’s agents may be in the party’s control and are discoverable. See id. ¶ 84 Traditional agency law principles will determine if a party is liable for their agent’s actions — here the fabrication of evidence. Section 7-60-106(1), C.R.S. 2023, defines a partnership as “an association of two or more persons to carry on, as co-owners, a business for profit.” Junda contends that he and van de Put are in an “informal partnership,” but by their own written partnership agreement Junda and van de Put explicitly entered into a formal 
39 partnership — defining themselves as “partners” in the contract and agreeing to share any resulting financial revenues. ¶ 85 Under section 7-60-109(1), C.R.S. 2023, “every partner is an agent of the partnership,” and under sections 7-60-113 and -115(1)(a), C.R.S. 2023, all partners are jointly and severally liable for “everything chargeable to the partnership” as the result of wrongful acts or omissions of “any partner acting in the ordinary course of the business of the partnership or with the authority of the other partners.” We conclude that this may include sanctions for the spoilation or fabrication of evidence. ¶ 86 The trial court found, and we agree, that van de Put acted within the ordinary course of the partnership’s business because he was the sole custodian of the Source Code — the alleged product of their partnership — and providing the Source Code files to Junda for the litigation was part of his role as its custodian under the delegation agreement. See Grease Monkey Int’l, Inc. v. Montoya, 904 P.2d 468, 475 (Colo. 1995) (A principal may be held liable for their agent’s fraud if “the servant or other agent was put in a position which enabled the agent to commit fraud, the agent acted within his apparent authority, and the agent committed fraud.”). 
40 ¶ 87 Junda and van de Put were the sole members of the partnership and had equal rights and authority over the Source Code. Contrary to Junda’s self-serving testimony, the delegation agreement required van de Put to provide Junda with any documents or materials reasonably necessary for him to pursue the litigation. As a result, van de Put’s actions are imputable to Junda. ¶ 88 Junda now points to Vail National Bank v. Finkelman, which holds that there is an exception in agency law for imputing the actions of an agent, or notice in that case, to a principal when the agent acts “adversely” to the principal’s interests. See 800 P.2d 1342, 1344-45 (Colo. App. 1990). As noted, this argument was not preserved for our review, so we cannot address it. See Gestner, ¶ 18. ¶ 89 The trial court had clear and convincing evidence before it to find that Junda was personally culpable for the fabrication of evidence. Regardless, Junda is responsible for van de Put’s actions because of their partnership. So the trial court did not abuse its discretion by dismissing Junda’s claims. See Pinkstaff, 211 P.3d at 702. 
41 D. The Court Did Not Err by Excluding Evidence of the Sanctions Order, Including the Court’s Earlier Credibility Determinations ¶ 90 Finally, on cross-appeal, LivWell argues that the trial court erred, and caused it prejudice, by excluding from trial evidence of Junda’s fabrication of evidence and the court’s credibility determination (contained in the sanctions order). LivWell argues specifically that the trial court erred when it refused to admit testimony concerning Junda’s fabrication of evidence under CRE 608(b) as specific acts probative of Junda’s character for truthfulness. LivWell also argues that CRE 608(b) and United States v. Woodard, 699 F.3d 1188 (10th Cir. 2012), provided grounds to admit the challenged evidence as it was relevant to Junda’s credibility. ¶ 91 Junda, in turn, posits that this issue was not preserved. Alternatively, Junda argues that the evidence is inadmissible hearsay and overly prejudicial in violation of CRE 403. Junda also argues that Woodard is distinguishable, that the sanctions order did not permit its use as an “adverse inference instruction,” and that CRE 608(b) only allows questions concerning a witness’s credibility or character for truthfulness on cross-examination. 
42 1. Standard of Review and Preservation ¶ 92 “When reviewing the trial court’s determinations of relevance, admissibility, probative value, and prejudicial effect of evidence, ‘we afford the evidence its maximum probative weight and its minimum prejudice’ and review only for an abuse of discretion.” Brooktree Vill. Homeowners Ass’n v. Brooktree Vill., LLC, 2020 COA 165, ¶ 96 (quoting Settle v. Basinger, 2013 COA 18, ¶ 64). ¶ 93 These arguments were preserved. Dill, ¶ 24; see also Itin v. Ungar, 17 P.3d 129, 136-37 (Colo. 2000). 2. Legal Framework and Analysis ¶ 94 CRE 608(b) permits a party, “in the discretion of the court,” to inquire on cross-examination about specific instances of a witness’s conduct “concerning the witness’ character for truthfulness or untruthfulness,” but it prohibits the use of extrinsic evidence for such purposes. Some federal courts have deemed prior judicial determinations of a witness’s credibility to be admissible under CRE 608(b) on cross-examination. See Woodard, 699 F.3d at 1192, 1195-96 (holding that a prior judge’s statement that the court “did not believe” a state government inspector’s testimony should have 
43 been admitted under Fed. R. Evid. 608 and not excluded under Fed. R. Evid. 403). ¶ 95 The trial court’s inclination to exclude LivWell’s questions was based on the unfair prejudice the questions would introduce. And while LivWell contends that the trial court failed to consider relevant applicable authority, instead relying on judicial experience alone, the trial court’s concerns and reasoning focused on CRE 403. See McGill v. DIA Airport Parking, LLC, 2016 COA 165, ¶¶ 30-31 (where both parties raised competing CRE 403 arguments, the trial court implicitly found the evidence was not unduly prejudicial). ¶ 96 CRE 403 grants a trial court discretion to exclude relevant evidence “if its probative value is substantially outweighed by the danger of unfair prejudice [or] confusion of the issues,” among other grounds. The trial court’s discussion at trial and its initial written order addressed these considerations. The court wanted neither party to gain an improper advantage by referencing the dismissed claims and excluded evidence. It stated: Just as Junda may not have it both ways by having his affirmative claims dismissed and then reasserting them as affirmative defenses, nor may LivWell have it both ways by restricting the scope of admissible evidence to 
44 its fraud claims while introducing evidence (in the form of the Court’s sanction order) of Junda’s misbehavior in connection with his affirmative claims. ¶ 97 When LivWell re-raised the issue, the court responded that the evidence presented a great risk of prejudice. Introducing a prior judge’s credibility determination struck the court as “extraordinarily prejudicial,” especially since LivWell’s questioning related to claims that had now been dismissed essentially in “a wholly different trial.” The trial court added that the jury should “resolve [LivWell’s] claims based upon the evidence, . . . judg[ing] for themselves whether they think Mr. Junda is credible or not, if he testifies.” It concluded by noting that it was “very reluctant to put [its] thumb on this proceeding . . . by basically telling the jury what to think.” ¶ 98 Such concerns go to the heart of CRE 403, and we afford the trial court broad discretion to determine the probative value and prejudicial effect of proffered evidence. See Brooktree, ¶ 96. Even assuming the evidence’s maximum possible probative value against its minimum prejudicial effect, we share the trial court’s concerns. Looking to LivWell’s offer of proof, a jury learning that a judge previously determined that a party lacked credibility, intentionally 
45 and repeatedly lied to the court, and falsified evidence would be, as the trial court put it, extraordinarily prejudicial. Moreover, the credibility determinations related to claims that had been dismissed. ¶ 99 Thus, the trial court did not abuse its discretion by refusing to admit such questioning, on CRE 403 grounds, under CRE 608(b). See McGill, ¶¶ 30-31. This is true despite LivWell’s point that a witness’s credibility is “always relevant.” See Gebert v. Sears, Roebuck & Co., 2023 COA 107, ¶ 32 (citing Margerum v. People, 2019 CO 100, ¶ 12). A court may use its discretion to properly exclude relevant evidence if, as here, the evidence was unduly prejudicial when compared to its probative value. CRE 403. And to LivWell’s contention that the court erred by not considering Woodard and its multifactor test, while Colorado courts may look to federal cases for guidance if they are persuasive, the court was not bound by Woodard. See Buckley Powder Co. v. State, 70 P.3d 547, 557 (Colo. App. 2002) (“Lower federal courts have no jurisdiction over state courts, and their decisions, even on federal law, do not bind Colorado state courts.”). We need not adopt the reasoning of Woodard where the court’s decision is proper under CRE 403. 
46 III. Disposition ¶ 100 We affirm the judgment of the trial court and remand the case to resolve the remaining stayed issue of attorney costs and fees. JUDGE GROVE and JUDGE SULLIVAN concur.